IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION.

KATHLEEN CLEMENTS;
STEVEN ARKIN;
HURIYET ANAZ;
JOHN BARRETT III;
JOANNE BARRETT;
RICHARD CASSIDY;
LES CHITESTER;
MARY CHITESTER;
DONALD COLBERT;
MARY COLBERT;
MICHAEL CONNELLY;                             **CIVIL ACTION #**
WILLIAM R. CREWS II;
SONIA CRISP;
DAVID DEWALT;
ARMER FITZWATER;
SHIRLEY A. FORD;
ABILIO GONZALEZ;
MARY GONZALEZ;
VICTORIA HAND;
LLOYD H. HALL;
DONALD HANNEY;
MARY HANNEY;
LARRY HINES;
PATRICIA HINES;
JAMES HINES;
ROBERT J. HUGHES;
GREGORY B. ICEBERG;                           **JURY TRIAL**
ROGER L. MORGAN;                              **DEMANDED**
DENNIS L. HALL,
KADIRCAN KARAKUS;
GERALD KRAUSS;
MALCOLM LAUDER;
MARGARET LAUDER,
LIBBY LAURIA;
EDWARD LAURIA;
AURIELIO LIBBY,
JACQUELINE F. LOWY;
LUZ LOZANO;
FRANK LUCE;
DILLARD MARCUM;
DALE MARCUM;
RANDY MARCUM;

--------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 1*

JAMES MATTHEWS;
PAUL MCHUGH;
PATRICIA MEDLOCK;
TERESA MEAGHER;
RAYMOND MEAGHER;
TERRY MELTZER;
JEFFREY MILLER;
DONALD MONKS;
ROSALIE MONKS;
IRMA MURPHY;
KYRAN BRITT MURPHY;
KYRAN MARTIN MURPHY;
MARGARET NAGY;
LEDA NEVLER;
JORDAN NEVLER;
KURT NORTON;
THOMAS PAASO;
THEODORA PAASO;
STEPHEN PARR;
JOHN C. PETERSON;
JOSE PINEDA;
RICHARD A. RANDALL;
ELIZABETH RICHARDSON;
JOHN RICHARDSON;
HARRY ROBINSON III;
RAUL RODRIQUEZ;
DEBRA SCHWARZKOPF;
STEVEN SHRAKE;
BEVERLY C. SILVA;
EMMANUEL O. SILVA;
HAROLD STAYMAN;
NORMA STAYMAN;
MARK T. STEELE;
DOMINIQUE SWETTE;
WILLIAM R. WHELCHEL;
JAMES LEE VAN FOSSAN;
ANITA VOLK;
JAMES WILLIAMS;
WILLIAM YOUNG;

Plaintiff Individuals;

-----------------

DYNASTY CONSTRUCTION, INC.;
GONZALEZ INVESTMENT PERSONAL

--------------------

PROPERTY FAMILY LIMITED PARTNERSHIP;
JB III CONSULTING, INC.;
JFL VENTURE FUND I, LLC;
JFL VENTURE FUND II, LLC;
JFL VENTURE FUND III, LLC;
JFL VENTURE FUND IV, LLC;
JFL VENTURE FUND V, LLC;
LOWY FAMILY TRUST; and
SECURE STORAGE CORP.,
                     Plaintiff Florida & Foreign Corporations, Limited
                     Liability Corporations & Limited Partnerships,
                                      PLAINTIFFS,

     -   Vs -

LOUIS J. PEARLMAN;
ROBERT FISCHETTI;
MICHAEL CRUDELE;
KRISTIN FINGER;
SALMA BACCHUS;
THEODORE WÜELLENKEMPER;
GREGORY McDONALD;
MARK TOLNER;
RICHARD CARL JANS;
RECA RENE CHAMBERLAIN;
and
CHARLES J. CRIST;
                                 Individual Defendants;
     ---------------
TRANS CONTINENTAL AIRLINES EMPLOYEE
        INVESTMENT SAVINGS ACCOUNT
        & STOCK PROGRAMS;
                                 Enterprise Defendant;
     ----------------
TRANS CONTINENTAL AIRLINES, INC.;
TRANS CONTINENTAL AIRLINES TRAVEL
        SERVICES, INC.;
TRANS CONTINENTAL ENTERPRISES, LLC;
TRANS CONTINENTAL ENTERTAINMENT INC.;
LOUIS J. PEARLMAN ENTERPRISES, INC.;
TRANS CONTINENTAL RECORDS, INC.;
TC LEASING, LLC;
TRANS CONTINENTAL TALENT, INC.;
FASHION ROCK, LLC;
TRANS CONTINENTAL TRAVEL SERVICE, INC.;
F.F. STATION, LLC;
TRANS COUNTRY MUSIC GROUP, INC.;

-------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 3*

TRANS CONTINENTAL STUDIOS, INC.;
TRANS CONTINENTAL AVIATION, INC.;
AEGIS CONSULTING, INC.; and
GERMAN INVEST-UND FINANZBERATUNG GmbH
                              Corporate Defendants;
    ------------------
FISERV CORPORATION individually and as successor
        to RETIREMENTACCOUNTS INC.;
BANK OF AMERICA;
FIFTH THIRD BANK;
WACHOVIA BANK;                     Corporate Defendants
                                   Trustees / Agents;

    ------------------
DUN & BRADSTREET CO.;              Corporate Defendant;
    ------------------
JOHN DOES # 1 – 10;
        (the names being fictitious and used
        solely for identification purposes, the
        actual names will be disclosed in
        future discovery);
JOHN DOE COMPANIES # 1 – 10;
        (the names being fictitious and used
        solely for identification purposes, the
        actual names will be disclosed in
        future discovery);
                              *"John Doe"* Defendants;
    ----------------
STATE OF FLORIDA,                 Sovereign Entity Defendants;

                                  DEFENDANTS.
_____/

        COME NOW the Plaintiffs, as listed in the above caption, a collection of

individuals, corporations and Limited Partnerships or other entities, domiciled in Florida

and elsewhere throughout the United States and joined by a common cause.   The

Plaintiffs had monies deposited in, with or entrusted in "Employee Investment Savings

Accounts" ("EISAs") or other securities including but not limited to stock, certificates of

deposit or other monies deposited with, held by or entrusted to the various entities

affiliated with Defendant Pearlman and his companies.

These Plaintiffs, by and through their undersigned Counsel, hereby sue the Defendants, all of which/whom were involved with Louis Pearlman, one or more of his companies, affiliated entities or co-conspirators, as well as other individuals and public officials with the State of Florida who/which participated in and/or benefited from an ongoing enterprise, scheme, conspiracy, pattern of fraud, and violation of Florida, US and International laws through which hundreds of millions of dollars were siphoned out of Florida and disappeared into Europe, the Caribbean, and elsewhere, as a direct and proximate result of Defendants' unlawful conduct, negligence, breach of fiduciary duties or malfeasance. Plaintiffs rely upon various federal and state statutory and common law causes of action enumerated herein, and allege as follows:

## COMPLAINT

## Jurisdiction

1) The Court has original jurisdiction over Plaintiffs' claims pursuant to 18 USC § 1964 – RICO.

2) The Court has original jurisdiction over Plaintiffs' claims pursuant to 18 USC § 1954 – Violation of Handling of Employee Savings Accounts.

3) The Court has original jurisdiction over Plaintiffs' claims pursuant to 18 USC § 1341 – Mail Fraud as it applies to the causes of action plead herein.

4) The Court has original jurisdiction over Plaintiffs' claims pursuant to 18 USC § 1343 – Wire Fraud as it applies to the causes of action plead herein.

5) The Court has original jurisdiction over Plaintiffs' claims pursuant to 18 USC § 1030 – Computer Fraud Act as it applies to the causes of action plead herein.

6) The Court has original jurisdiction over Plaintiffs' claims which challenge the constitutionality of certain provisions of Florida Statute Section 768.28.

7) The Court has ancillary and/or supplemental jurisdiction of all Plaintiffs' state law claims pursuant to 28 USC § 1367.

8) The Court has original jurisdiction over these claims subject to the Securities Acts of 1933, §§ 5 and 12, and the Securities Act of 1934, § 10, and Securities and Exchange Commission Rule 10(b)5.

9) Each of the claims of the named Plaintiffs exceeds the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

10) Each of the claims of the named Plaintiffs exceeds the statutory limit of this Court, exclusive of attorneys' fees, costs and interest.

11) Alternatively, the Court has jurisdiction under 28 USC § 1332 through diversity jurisdiction, as many Plaintiffs reside outside the State of Florida, and their claims exceed the minimum required to obtain federal court jurisdiction in these matters.

## VENUE

12) Venue is proper in this Court. Many of the Plaintiffs reside in Hillsborough or Pinellas County, or elsewhere in the Middle District of Florida.  Also, Offices and residences of several of the Defendants and/or Defendant companies are either in Hillsborough or elsewhere in the Middle District of Florida and this district is where many of the acts which form the basis of Plaintiffs' claims occurred.

## PARTIES

13) Plaintiffs are individuals, corporations, partnerships and trusts residing in this judicial district, in other districts in the State of Florida, in other states and in foreign countries.

14) Each Plaintiff was defrauded into (i) entrusting, transferring or depositing monies into one or more Trans Continental Employee Investment Savings Accounts (EISAs) and/or Retirement Accounts, and/or the Trans Continental Travel Services, Inc. Stock Program (Trans Con Stock Program), (ii) otherwise purchasing securities and/or certificates of deposit monies or (iii) opening one or more savings accounts.

15) Plaintiffs fall into three distinct groups.   Plaintiffs Group 1 are/were EISA depositors.  Plaintiff Group 2 are/were persons who "purchased" stock in one of the Pearlman Companies, including the Trans Con Stock Program.  Plaintiff Group 3 are/were EISA depositors who also had Individual Retirement Accounts (IRAs).  Some Plaintiffs had two or all three types of accounts or investments.

16) The majority of the Defendants fall into four distinct categories.  Defendant Group 1 consists of individuals who were the officers, directors, managers and/or agents of the Pearlman Companies who were directly involved with the enterprise and scheme to defraud Plaintiffs.  Defendant Group 2 consists of the Defendant Pearlman Companies and The Fraudulent Enterprise as that term is defined below.   Defendant Group 3 includes individuals and public officials of the State of Florida, including former Attorney General and now Governor Charlie Crist.  And, Defendant Group 4 include the banks and/or trust companies and financial reporting companies, including Bank of America, Wachovia Bank, Fifth Third Bank, Fiserv (successor to Retirement Accounts Inc.) which were responsible for Plaintiffs' monies, and Dun &

Bradstreet, which issued financial reports about Defendant companies upon which Plaintiffs relied.

17) Defendant Trans Continental Airlines, Inc. ("Trans Con Airlines") is a Florida corporation with its principal place of business in Orlando, Florida.  Defendant Trans Con Airlines maintained the following schemes: (i) The Trans Continental Employee Investment Savings Accounts (Trans Con EISA or EISA) and (ii) the Trans Continental Airlines Travel Service, Inc. Preferred Stock Plan (the Trans Con Stock Program).

18) Defendant Trans Continental Airlines Travel Services, Inc. ("Trans Con Airlines Travel") is a Florida company with its principal place of business in Orlando, Florida.

19) Defendant Trans Continental Enterprises, LLC a/k/a Trans Continental Enterprises LLC ("Trans Con Enterprises") is a Florida limited liability company with its principal place of business in Orlando, Florida.

20) Defendant Louis J. Pearlman Enterprises, Inc. ("Pearlman Enterprises") is a Florida corporation with its principal place of business in Orlando, Florida.

21) Defendant Trans Continental Records, Inc. ("Trans Con Records") is a Florida corporation with its principal place of business in Orlando, Florida.

22) Defendant TC Leasing, LLC ("TC Leasing") is a Florida limited liability company with its principal place of business in Orlando, Florida.

23) Defendant Trans Continental Talent, Inc. ("Trans Con Talent") is a Florida corporation with its principal place of business in Orlando, Florida.

24) Defendant Fashion Rock, LLC ("Fashion Rock") is a Florida limited liability company with its principal place of business in Orlando, Florida.

--------------------

25) Defendant Trans Continental Travel Service, Inc. ("Trans Con Travel") is a "void" Delaware corporation with its principal place of business in Orlando, Florida.

26) Defendant F.F. Station, LLC ("F.F. Station") is a Florida limited liability company with its principal place of business in Orlando, Florida.

27) Defendant Trans Country Music Group, Inc. ("Trans Country Music") is a Florida corporation with its principal place of business in Orlando, Florida.

28) Defendant Trans Continental Studios, Inc. ("Trans Con Studios") is a Florida corporation with its principal place of business in Orlando, Florida.

29) Defendant Trans Continental Aviation, Inc. ("Trans Con Aviation") is a Florida corporation with its principal place of business in Orlando, Florida.

30) Defendant Aegis Consulting, Inc. ("Aegis Consulting") is a Florida corporation with its principal place of business in Valrico, Florida.

31) Defendant German Invest-und Finanzberatung GmbH ("German Invest") is a German company with places of business in Germany and Florida.

32) Defendant Louis J. Pearlman ("Pearlman") is a Florida resident who conducted business in and from the State of Florida.  Defendant Pearlman is/was the organizer and principal actor involved with or responsible for (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, (ii) the improper and potentially illegal activity involving Defendant Crist, the OFR and Florida and (iii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

33) Defendant Pearlman is/was (i) President and Registered Agent of Defendants Tran Con Airlines, Trans Con Records, and Trans Con Aviation; (ii) Managing Member or Manager and Registered Agent for Defendants TC Leasing, Fashion Rock, and F.F. Station; (iii) Director and Registered Agent of Defendants Pearlman Enterprises and Trans Con Studios; (iv) Chairman and Director for Trans Con Talent and (v) co-owner of defendant German Invest.

34) Defendant Pearlman owns, controls and/or directs the operations of Defendants Tran Con Airlines, Trans Con Records, TC Leasing, Fashion Rock, F.F. Station, Pearlman Enterprises, Trans Con Studios, Trans Con Talent, Trans Country Music, Aegis Consulting, Trans Con Airlines Travel, Trans Con Travel and German Invest (hereinafter collectively referred to as "Defendant Pearlman Companies").

35) Defendant Robert Fischetti ("Fischetti") is a Florida resident who lives within this judicial district and who conducted business in and from the State of Florida. Defendant Fischetti is/was an officer, director and/or agent of one or more of Defendant Pearlman Companies.  Defendant Fischetti is/was a director, officer, employee and/or agent of Defendant Pearlman involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

36) Defendant Michael Crudele ("Crudele") is a Florida resident who lives within this judicial district who conducted business in and from the State of Florida.  Defendant Crudele is/was an officer, director and/or agent of one or more of Defendant

Pearlman Companies.  Defendant Crudele is/was a director, officer, employee and/or agent of Defendant Pearlman involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

37) Defendant Kristin Finger ("Finger") is a Florida resident who lives within this judicial district who conducted business in and from the State of Florida.  Defendant Finger was an officer, employee of one or more of Defendant Pearlman Companies. Defendant Finger was responsible for the depositor and/or investor databases. Defendant Finger was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

38) Defendant Salma Bacchus ("Bacchus") is a Florida resident who lives within this judicial district who conducted business in and from the State of Florida.  Defendant Bacchus was an officer, employee of one or more of Defendant Pearlman Companies. Defendant Bacchus was the controller of Defendant Pearlman Companies and was responsible for tracking of monies, transferring of monies and payments from Defendant Pearlman Companies.  Defendant Bacchus was responsible for the transfer of depositor and/or investor monies to all persons, entities and businesses in the US and overseas. Defendant Bacchus was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to

deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs.

39) Defendant Theodore Wüllenkemper ("Wüllenkemper ") maintains a place of business, properties and assets in the State of Florida and conducts business in this judicial district.  Defendant Wüllenkemper  is a co-owner of Defendant Pearlman Companies and other businesses with Defendant Pearlman.  Defendant Wüllenkemper was directly involved with (i) the enterprise and scheme to defraud Plaintiffs and in the violation of applicable laws and regulations related to the EISA, stock and other securities which Plaintiffs were induced to deposit or purchase, and (ii) the misappropriation of hundreds of millions of dollars from Plaintiffs. Defendant Wüllenkemper also helped Defendant Pearlman in the establishment of German entity defendant German Invest into which millions of dollars misappropriated from plaintiffs was sent.

40) Defendant Gregory McDonald ("McDonald") is a Florida resident and was a Vice-President of many Defendant Pearlman Companies, was a partner and co-owner of many Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

41) Defendant Mark Tolner ("Tolner") is a Florida resident and was president of Defendant Fashion Rock and Transcontinental Talent and was actively involved with other of Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

42) Defendant Richard Carl Jans ("Jans") is a Florida resident and was involved with Defendant Pearlman Companies and was actively involved in and benefited from The Fraudulent Enterprise as defined herein.

43) Defendant Reca Rene Chamberlain ("Chamberlain") is a Florida resident and was the in-house counsel to Defendant Pearlman, Defendant Pearlman Companies and involved in and benefited from The Fraudulent Enterprise as defined herein.

44) Defendant Charlie Crist ("Crist") is the Governor of Florida, former Attorney General of Florida and former Member of the Financial Services Commission[1] who resides in Tallahassee, Florida.   The evidence from (i) independent and credible reporters, authors and investigators, (ii) witnesses with knowledge of The Fraudulent Enterprise, and (iii) statements by Court Appointed Officials in Florida involved with Defendant Pearlman and Defendant Pearlman Companies, Defendant Crist appears to be a person who benefited from the below described fraud and enterprise and by, among other things, (i) engaging in questionable, improper and/or potentially unethical *ultra vires* acts while an official of the State of Florida; (ii) failing to take the necessary steps as required by his job as Attorney General; (iii) delaying or interfering with the investigations against Defendant Pearlman and Defendant

---

[1] The Financial Services Commission is a part of the Executive Branch of the Florida Government and was established by F.S. § 20.121.   The Financial Services Commission is the Supervisory and/or Governing Body responsible for The Office of Financial Regulation.   The powers, structure, authority, powers, budget and virtually all other aspects of the Financial Services Commissions and its commissioners over and related to the Office of Financial Regulations is set forth in F.S. § 20.121. (3) a.   At all times, relevant hereto, Defendant Crist was one of four Commissioners on the Financial Services Commission along with former Governor Jeb Bush, former Chief Financial Officer Tom Gallagher and former Commissioner of Agriculture Charles Bronson.  At all times the Commissioner of the Office of Financial regulations was Don Saxon.  Because of his position as the Chief Legal Officer of the State of Florida and Commissioner of the Office of Financial Regulation, Defendant Crist was in a position of authority regarding the day to day affairs of the Office of Financial Regulation and as such was also in a unique position to make known his positions and/or recommendations about investigations being considered and/or in process by the Office of Financial Regulation, including the investigations into Defendant Pearlman and Defendant Pearlman Companies.

Pearlman's Companies; (iv) conspiring to delay or interfere with the investigations against Pearlman; (v) violating the applicable laws and regulations governing his position as an attorney; (vi) violating the oath of office as Attorney General; (vii) engaging in negligent and potentially improper acts such as using his official position and influence which helped and/or allowed Defendant Pearlman and Defendant Pearlman Companies to continue the scheme to defraud and unlawful enterprise which he knew, had reason to know or should have known and/or could have discovered through the exercise of reasonable diligence was defrauding Plaintiffs and others out of hundreds of millions of dollars; (viii) attempting to conceal, mislead the public and/or otherwise cover up connections between Defendant Pearlman, Defendant Pearlman Companies and potentially improper contributions and/or other benefits during Crist's campaign for Governor by making potentially untruthful, misleading and negligent statements about campaign contributions, fundraising activities, use of private plane(s) and other benefits received, directly or indirectly from Defendant Pearlman and/or the Defendant Pearlman Companies; (ix) breaching fiduciary duties; (x) benefitting from and/or receiving potentially misappropriated funds; (xi) failing to take necessary and appropriate action through investigations or acting upon available information so as to prevent the misappropriation of hundreds of millions of dollars; (xii) violating the public trust and official duties and (xiii) other wrongful activities.

45) Defendant Pearlman Companies are all alter – egos of one another and (i) have similar if not identical directors and officers, (ii) use the same employees, (iii) use the same offices, (iv) use the same bank accounts, (v) use the same telephone lines, (vi)

the day to day management is controlled by the same people, (vii) are directed, owned, managed, controlled and/or connected to Defendant Pearlman and (viii) do not otherwise observe proper corporate formalities.    See Receiver's Report, Exhibit 1, attached hereto and incorporated by reference.

46) In addition and as it relates to The Fraudulent Enterprise and the other actions which form the basis for this complaint, Defendant Pearlman Companies failed to maintain separate records and accounts, shifted money from one account to another indiscriminately and used their names and assets interchangeably.  Id.

47) Defendant Bank of America ("Bank America") is a public company operating as a bank within the State of Florida and in this judicial district.  Defendant Bank America is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs' EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

48) Defendant Fifth Third Bank ("5/3 Bank") is a public company operating as a bank within the State of Florida and in this judicial district.  Defendant 5/3 Bank is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

49) Defendant Wachovia Bank is a public company operating as a bank within the State of Florida and in this judicial district.  Defendant Wachovia is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper.

50) Defendants Bank America, 5/3 Bank and Wachovia are hereinafter referred to as Defendant Banks.

--------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 15*

51) Defendant Dun and Bradstreet ("D&B") is a US company and credit rating agency, doing business in the State of Florida and within this judicial district. Defendant D&B provides credit and business condition reports on public and private companies, including the Defendant Pearlman Companies.

52) Defendant Fiserv ("FISERV") is a US company doing business in the State of Florida and within this judicial district. Defendant FISERV is a Trust Company and/or bank, which was to maintain and/or safeguard some of Plaintiffs EISA monies, Individual Retirement Accounts, stocks or other commercial paper. Defendant FISERV is the successor in interest to Retirement Accounts Inc.

53) Defendant State of Florida is a US state with its seat of government located in Tallahassee, Florida.

## GENERAL FACTUAL ALLEGATIONS

### Mid 1990s - 2003

54) In or about the mid 1990s, Defendant Pearlman determined to organize a scheme to defraud persons such as Plaintiffs.

55) The scheme involved the use of employee savings and/or company stock which would be "sold to" or in which certain persons could "participate".

56) The part of the scheme that involved "employee savings plans" was the Trans Con "EISA".See Exhibits 2-14, attached hereto and incorporated by reference.

57) The part of the scheme that involved "securities and/or stocks" was known as The Trans Con Stock and Certificates of Deposit. See Exhibit 15, attached hereto and incorporated by reference.

58) The combination of the "EISA" and the Trans Con Stock Program was known as the Transcontinental Airline Employee Investment Savings Account and Stock Programs.

59) The part of the scheme that involved "securities and/or stocks" was known as The Trans Con Stock Program (hereinafter "The Fraudulent Enterprise").

60) While monies for The Fraudulent Enterprise originally came primarily from employees and shareholders, outside agents have also been selling the EISA program to members of the public under the "friends and family" umbrella for ten or more years.  From 1995 to 2002, these monies appeared to be sufficient for Defendant Pearlman Companies and purposes.

61) As part of The Fraudulent Enterprise, Defendant Pearlman used false credit reporting statements from Defendant D&B, used mislabeled accounts at Defendants Bank America, 5/3 Bank and Wachovia and used mislabeled accounts at Defendant Retirement Accounts.com and FISERV.

62) For more than a decade, The Fraudulent Enterprise and the securities, investments and/or accounts were marketed, sold, offered to persons who had no real connection or were unrelated parties to Defendant Pearlman Companies.

63) Later as Defendant Pearlman sought to expand his businesses and companies, he needed more capital and decided to expand The Fraudulent Enterprise to include more and more persons regardless of whether or not they had any connections to the Defendant Pearlman Companies, and, specifically  -- to non-employees.

64) From 2002 to 2003, Defendant Pearlman Companies came under investigation by former Attorney General Bob Butterworth, then Defendant Crist and other officials in the State of Florida for the EISA and Trans Con Stock Programs (See April 28, 2003

letter at Exhibit 16, attached hereto and incorporated by reference)  and for the Wilhelmina Modeling Investigation that included over 2,000 consumer complaints.

65) Defendant Pearlman Companies and even the Defendant Pearlman himself were under active investigation by the Florida Office of Financial Regulation, which is or was under the authority of the Florida Attorney General and Defendant Crist.

66) Public officials in Florida, including Defendant Crist and others in the OFR had actual or constructive knowledge that persons in Florida had accused Defendant Pearlman and Defendant Pearlman Companies of being engaged in fraudulent marketing schemes, consumer fraud, the sale of unregistered securities, and other illegal activities in or being run out of Defendant Pearlman Companies in the State of Florida.

67) As early as 2002, 2003 and 2004, officials in Florida, including Defendant Crist and others in the OFR had actual or constructive knowledge about accusations related to Defendant Pearlman's modeling promotion companies and improprieties related directly to Defendant Pearlman and Defendant Pearlman Companies' financial transactions, the EISA programs and the stock program.

68) Officials in Florida, including Defendant Crist and others in the OFR, had actual or constructive knowledge that complaints, dating back to 1995, had been made against Defendant Pearlman and Defendant Pearlman Companies by the FDIC, consumers, the State of Texas Securities Board and Lloyd's of London related to financial improprieties, fraud, misrepresentations and the unlawful sale of CDs and securities.

69) In 2001, Officials in Florida, including Defendant Crist and others in the OFR had received complaints and had information that Defendant Pearlman and Defendant

Pearlman Companies were violating in Florida law with The EISA Accounts.  In

response to these complaints, Defendant Pearlman wrote a letter in which he said:

> *Our company is Trans Continental Airlines Inc.  We do not offer to anyone other*
> *than employees or our private shareholders our Employee Investment Savings*
> *Account plan.*
>
> *Our employees have their own individual accounts set up with approved banking*
> *institutions.  Our matching plan is based on years of service.  We have not*
> *solicited anyone nor have (we) accepted anyone to this plan that does not qualify*
> *and certainly not to the general public.*

70) Based on that letter, the investigation was stopped.

71) In 2003, Officials in Florida, including Defendant Crist and others in the OFR had

actual knowledge that Defendant Pearlman and Defendant Pearlman Companies were

engaged in violation of securities laws in Florida, through The Fraudulent Enterprise.

*See Exhibit 16.*

72) In response to these new complaints, in mid-January 2004 Peter Antonacci Esq.[2]

made phone calls to persons unknown and on January 30, 2004 Mr. Antonacci wrote

the Office of Financial Regulation identifying himself as "Counsel for Trans

Continental  Companies" and stating:

> *This is a follow up to our conversation this past week with respect to my*
> *client the Trans Continental Companies, specifically with regard to the*
> *Trans Continental Airlines Employee Investment Savings Account (TCA*
> *EISA) and the Trans Confidential Records, Inc. Confidential Private*
> *Placement Memorandum . . .*
>
> *Neither of these products has been offered for sale to the public by the*
> *company since at least 2002.  Accordingly, the company has not*
> *authorized any broker to offer for sale either of these products to the*

---

[2] Peter Antonacci was a former Statewide Prosecutor for the Office of the Attorney General, and close
professional acquaintance of Defendant Crist.   Mr. Antonacci and his firm have extra-ordinary access to
persons in position of power at the highest levels of Florida Government and all of the branches thereof,
including former Governor Jeb Bush and Defendant Crist.

> *public since then.  If your office receives any information to the contrary,*
> *please contact me so that the immediate action can be taken by the*
> *company.*

73) This letter was certified as being true and accurate by Defendant Pearlman and the statements by Defendant Pearlman were false, untrue and sent so that The Fraudulent Enterprise could be continued.

74)  Again the Office of Financial Regulation halted all investigations into The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies.

75) During the period from 2003 – 2005, it was a matter of public record and it was the specific job of The Office of Financial Regulation to aggressively pursue Racketeering and Securities Fraud[3].   In fact, The Fraudulent Enterprise, Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts and the activities of Defendant Pearlman and Defendant Pearlman Companies comprised one of the the Top 6 Threats to Florida Investors (High Yield Investment Schemes), as they were identified by The Office of Financial Regulation itself.

76) From 2001 to 2006, as a result of its investigations, The Office of Financial Regulation had or should have had actual and/or constructive knowledge, based upon

---

[3] Periodically from 2003 forward, The Office of Financial Regulation issued Press Releases about their alleged efforts to reduce securities fraud, racketeering, schemes to defraud investors and banking fraud. These and other Press Releases are posted and can be found on the Office of Financial Regulation Website at www.flofr.com/PressReleases.  They include a January 6, 2003 Release about "Seven Suspects Arrested for Racketeering and Securities Fraud Charges",  May 23, 2003 Release "Man Arrested for Sale of Unregistered Securities",  and April 6, 2005 Release of "Top Ten Threats to Florida's Investors" which notably ranked them as follows # 1 – Ponzi Schemes, # 2 Unlicensed Individuals Selling Securities, # 3 Unregistered Investment products, # 4 – Promissory Notes, # 5 –Senior Investment Fraud and # 6 – High Yield Investment Schemes.

--------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 20*

complaints made against Defendant Pearlman and Defendant Pearlman Companies, that The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies were suspect so as to aggressively pursue them.

77) During periods relevant to underlying facts of this complaint, The Office of Financial regulation had a very close professional relationship with Defendant Crist.  In fact, The Office of Financial Regulation worked closely with The Attorney General and Defendant Crist himself in a similar prosecution related to banking fraud[4].

78) In fact, according to F.S. § 20.121 (3) (a) 2, *"if the Office (of Financial Regulation) has reason to believe that any criminal law of this states has or may have been violated, the office shall refer any records tending to show such violation to state or federal law enforcement or prosecutorial agencies and shall provide investigative assistance to those agencies as required"*.

79) During the period from 2001 to 2006, it was the Florida law that the "*records tending to show (the) violation"* related to Defendant Pearlman, Defendant Pearlman Companies, The Fraudulent Enterprise, The EISA Accounts and The Trans Con Stock Program Accounts, had to be sent to Defendant Crist's offices.

80) Despite this knowledge and the information that had to have been provided by The Office of Financial Regulations, and for reasons which border on potentially criminally negligent or willful breach of duties or other unlawful activities, the Office of the Attorney General, as then headed by Defendant Crist (also Commissioner of

---

[4] In January 2006, The Office of Financial Regulation and Defendant Crist proudly announced their close cooperation in the investigation, prosecution and settlement of a $325 million predatory lending scheme. Involving banks, loan documents,

-------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 21*

the Office of Financial Regulation) determined or recommended that investigations into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

81) From 2001 to 2006, The Office of Financial Regulation had actual and/or constructive knowledge of complaints against Defendant Pearlman and Defendant Pearlman Companies related to The Fraudulent Enterprise, the EISA accounts and The Trans Con Stock program accounts, and the activities of Defendant Pearlman and Defendant Pearlman Companies – and for reasons which border on the criminal negligence and willful breach of duties or other unlawful activities – Defendant Crist in his official capacity as Attorney General directed that that investigation into Defendant Pearlman and Defendant Pearlman Companies be halted and no action be taken.

82) Once Defendant Florida's investigations into Defendant Pearlman and Defendant Pearlman Companies were ended or discontinued in January 2004, The Fraudulent Enterprise then kicked into a new phase.

83) Starting in about January 2004, The Fraudulent Enterprise started to accept more monies from persons other than employees or shareholders of Defendant Pearlman Companies.

84) From 2004 forward, Defendant Pearlman directed Defendants Crudele and Fischetti to market more aggressively and to use a larger network of brokers and third parties.

85) Defendants Crudele and Fischetti started to direct the aggressive marketing of the EISA program and The Fraudulent Enterprise.

86) As part of The Fraudulent Enterprise, Defendants Pearlman, Crudele and Fischetti sought to solicit brokers to assist them in convincing persons to deposit and/or entrust monies to The Fraudulent Enterprise.

87) The Fraudulent Enterprise enticed many people throughout Florida and elsewhere around the United States and overseas to deposit and/or entrust their monies to Defendant Pearlman and Defendant Pearlman Companies.

### Representations to Depositors and Investors

88) Plaintiffs – like many other innocent persons – were told that if they entrusted and/or deposited their monies to/with The EISA and Trans Con Stock Plan, they would be guaranteed a return higher than they could realize at or through any other secured instrument, investment or account. *See Exhibits 17, 18 and 19, attached hereto and incorporated by reference*.

89) Plaintiffs were told that these high yields were possible because of Defendant Pearlman's connections and Defendant Pearlman Companies increased bargaining power or superior financial condition.

90) Plaintiffs were told that their money was deposited in FDIC insured accounts, that the accounts were protected by additional insurance through Lloyd's of London or AIG and that separate proper "trust" or "beneficiary" accounts would be established for them. *See Exhibit 17, Exhibits 2-14.*

91) Plaintiffs were provided with copies of Dun & Bradstreet reports and statements from accountants. *See Exhibits 16 & 17.*

92) Plaintiffs were provided with Account Opening Forms, Detailed Instructions About Mailing or Wiring Monies, Deposit Slips, Withdrawal Slips and Monthly Statements. *See Exhibits 3, 6, 12, 13, 20, attached hereto and incorporated by reference.*

93) These were sent to Plaintiffs by mail or fax.

94) On the surface, The Fraudulent Enterprise looked like it was legitimate.

95) Plaintiffs had no way of knowing that in fact their monies were not being placed into the proper, secure trust accounts, that their monies were not insured, that there were no accountants, there was not insurance and the monies were not going to be safe.

### The Fraudulent Enterprise Documents from 1995 - 2002

96) Samples of the documents used by Defendant Pearlman for The Fraudulent Enterprise were:

    a) Documents issued on Defendant Pearlman Companies letterheads in which The Fraudulent Enterprise was promoted with Lloyds of London insurance and FDIC insurance -  *See Exhibit 17, 21,* attached hereto and incorporated by reference;

    b) Copies of Dun & Bradstreet Reports provided by Defendant Pearlman Companies to induce Plaintiffs to give monies over to The Fraudulent Enterprise -  *See Exhibit 22* attached hereto and incorporated by reference;  and

    c) Copies of the EISA Marketing Materials package – *See Exhibits 17,18, 19*.

97) In addition to the financial irregularities and violations of 18 USC § 1962, The Fraudulent Enterprise also involved the sales of stock to unaccredited investors, under false pretenses, and without an appropriate prospectus containing warnings, disclaimers and "blue sky" notifications, and limiting sales to individuals of a certain

minimum net worth, all of which were in violation of the US Securities Acts of 1933 and 1934 and state of Florida securities laws.

98) The benefits that flowed to Defendants from their involvement with The Fraudulent Enterprise varied.  For example,

a)  Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans and Chamberlain and the Defendant Pearlman Companies directly benefited from the monies they received, stole and/or misappropriated from Plaintiffs,

b)  Defendant Banks and FISERV benefited from the monies which they were able to deposit and/or the hundreds of millions of dollars in commercial transactions in which they engaged and from which they earned fees as a direct and/or indirect result of their involvement, receipt and transfer of monies that came from The Fraudulent Enterprise,

c)  Defendant Crist received and/or benefited from among other things:

i)   campaign contributions that should never have been accepted from Defendant Pearlman and Defendant Pearlman Companies at the time his offices were investigating Defendant Pearlman and Defendant Pearlman Companies and which monies are/were almost certainly originated from the monies that were entrusted to Defendant Pearlman and Defendant Pearlman Companies through The Fraudulent Enterprise;  *See Exhibit 1*;

ii)  unpaid or underpaid use of a private jet belonging to Defendant Pearlman and Defendant Pearlman Companies at the time when Defendant Crist's offices were investigating Defendant Pearlman and Defendant Pearlman Companies

*See Crist Gubernatorial Campaign reimbursements paid to Trans Continental for private jet usage -- Exhibit 16;*

iii) acceptance of unpaid-for use of private skyboxes, tickets and/or other similar sports and entertainment facilities gratuities when Defendant Crist's offices were investigating Defendant Pearlman and Defendant Pearlman Companies;

iv) acceptance of unpaid-for fundraisers when Defendant Crist's offices were investigating Defendant Pearlman and Defendant Pearlman Companies (*see St. Petersburg Times article in Exhibit 16 that reference the fundraisers*); and

v) other unpaid benefits at a time when Defendant Crist's offices were investigating Defendant Pearlman and Defendant Pearlman Companies.

99) The Fraudulent Enterprise was a scheme and artifice to defraud Plaintiffs.

100) The Defendant Banks were under a duty to privately ensure that Plaintiffs' monies which were being entrusted to them, were sent to a proper trust account, with proper insurance and to confirm that it got to the intended location and was secure.

101) Defendant FISERV and its predecessor Defendant Retirement Accounts Inc were under a duty to ensure that the monies were safeguarded from the moment in time that they were transferred, wired or mailed to Defendant FISERV for deposit into the individual Plaintiffs' accounts.

102) Defendant FISERV and its predecessor Defendant Retirement Accounts Inc were also under a duty to ensure that the monies could not be withdrawn from the accounts into which they were deposited without the express prior written consent or direction of the individual Plaintiffs.

103)    The Defendant Banks and FISERV were under a duty to ensure that Defendant

Pearlman and Defendant Pearlman Companies did not transfer monies from the EISA

and Trans Con Stock accounts in the State of Florida to the Defendant Eurosavings in

Germany or other offshore accounts.

104)    Defendant Crist and State of Florida had a duty to investigate and take the

necessary and prudent steps to ensure that while they continued to investigate and/or

based on the complaints and/or reports they received from persons claiming to be

unable to get their money out of EISA or Trans Con Stock accounts, that Defendant

Pearlman and Defendant Pearlman Companies could not remove the monies from the

jurisdiction.

105)    As a direct result of The Fraudulent Enterprise, Plaintiffs and others, including

Floridians, and others from around the United States and internationally lost at least

three-hundred-seventeen-million dollars ($317,000,000).  *See Exhibit 16*.

106)    Many Plaintiffs were financially ruined.  Some lost their entire life savings, others

lost retirement accounts, and others lost their children's college funds.

107)    All of Plaintiffs were victimized through Defendant Pearlman and Defendant

Pearlman Companies and The Fraudulent Enterprise.

108)    The Defendant Banks, Defendant FISERV, Defendant Crist, Defendant Florida

and others had actual and/or constructive knowledge that The Fraudulent Enterprise

was underway.  Each of these Defendants had a duty to conduct reasonable

investigations and take reasonable actions to halt the transfer of monies from the

EISA and Trans Con Stock accounts.

109)   If Defendant FISERV had adhered to the customary and accepted standard of care, Plaintiffs' monies would have only been sent to accounts from which they could not have been withdrawn them without Plaintiffs express written consent.

110)   If Defendants Bank America, 5/3 Bank and Wachovia had adhered to the customary and accepted standard of care, they would have checked incoming deposits, wires and monies and ensured that the monies entrusted to them were properly handled or they would have made the necessary inquiries into the EISA Accounts and/or they would have demanded the appropriate corporate resolutions, insurance certificates, underlying contracts and other documents.  And, as a result, the Plaintiffs' monies would either never have been accepted for deposit or the monies would have been deposited into proper individualized trust or fiduciary accounts with Plaintiffs' names and other identification and as a result, monies could not have been withdrawn without Plaintiffs' consent.

111)   If Officials of the State of Florida, including, persons within the Florida Office of Financial Regulation and the Attorney General's Office, had taken ordinary care in the performance of their jobs dating back to the 1990s, or if they had even conducted or continued a modest investigation or followed through with what is required, ordinary and customary due diligence, they would have discovered the underlying scheme and could have taken action to protect Plaintiffs and the other depositors.

112)   In violation of his duties and professional responsibilities, Defendant Crist accepted at least $11,000 and other benefits from Defendant Pearlman and Defendant Pearlman Companies and co-conspirators at the time when Defendant Crist's offices

were investigating Defendant Pearlman and Defendant Pearlman Companies. *See*

*Exhibits 16*, attached hereto and incorporated by reference.

113)    In violation of his duties and professional responsibilities, Defendant Crist

accepted monies from Defendant Pearlman and Defendant Pearlman Companies at a

time when Defendant Crist's offices were investigating Defendant Pearlman and

Defendant Pearlman Companies and which monies he knew, should have known or

could have determined were the equivalent of monies stolen and/or misappropriated

from Plaintiffs through The Fraudulent Enterprise.

114)    Defendant Pearlman convinced the other Defendants to go along with him and as

a result Defendants FISERV, Bank America, 5/3 Bank and Wachovia Bank (i) did not

report the problems they learned of because of their relationship with and the profits

they earned from their business with Defendant Pearlman and Defendant Pearlman

Companies, (ii) did not perform their fiduciary duties, and allowed monies to be

transferred to wrong or improper or unauthorized accounts; (iii) did not utilize

ordinary care, did not adhere to banking reporting laws such as the US Bank Secrecy

Act, which requires reporting suspicious activity; and allowed monies to be deposited

into improper, unintended and/or non-trust or non-fiduciary accounts from which they

were withdrawn and misappropriated, and also allowed money (approximately $78

million or more, according to reports) to be transferred out of Defendant Pearlman

Company EISA accounts and/or overseas in the last few months of 2006 and the

beginning of 2007.

115)    Defendant Crist – as a licensed attorney, the Attorney General of Florida and a

Public Official of the State of Florida - had a duty to avoid the appearance of

--------------------

impropriety especially in relation to Defendant Pearlman and Defendant Pearlman Companies who/which were under investigation multiple times by him, Defendant Florida and the OFR.

116)     The timing and manner of the political contributions from Defendant Pearlman and Defendant Pearlman Companies to Defendant Crist and the time when he was responsible for, overseeing and/or had knowledge of investigations into Defendant Pearlman and Defendant Pearlman Companies would or should have put a person in Defendant Crist's position on notice of the potential for the appearance of impropriety for him to accept the thousands of dollars of campaign contributions, use of private jets, sky boxes, hosting of fundraisers and other benefits from a person/entity under investigation.

117)     Defendant Crist violated his professional duty to avoid the appearance of impropriety and may have also allegedly knowingly or negligently accepted monies which were stolen and/or misappropriated from Plaintiffs and others through The Fraudulent Enterprise.

118)     In or about the beginning of 2006, as the existence of The Fraudulent Enterprise started to become public, Defendant Crist, other officials from the OFR and other officials in the State of Florida started to engage in and/or direct a pattern of activity that was intended to interfere with Plaintiffs ability to secure the return of their monies, advance the investigations into persons involved and/or was otherwise intended to interfere with Plaintiffs' due process rights.

119)     Specifically and as recently as 2007 in response to an editorial in local Florida newspapers that urged persons to contact their local law enforcement authorities to

report if and how they were victimized - an agent for the OFR and Defendants Florida

and Crist – caused a letter to be sent and published in which victims were urged not to

contact their local law enforcement agencies and allow the Defendants agencies to

finish their investigations without the involvement of other agencies.  Defendant

Florida and Crist – through this agent – sought to prevent persons from exercising

their rights and from taking steps to protect their property.  *See Fla. OFR's Danielle*

*Brooks Letter to the Editor, Exhibit 16*.

120)   As a direct and proximate result of Defendants individual and/or collective

negligence and/or wrongful acts, (i) hundreds of millions of dollars have been stolen;

(ii) Defendant Pearlman has fled and is hiding in a foreign country at an undisclosed

location, continuing the Fraudulent Enterprise, by hiding, selling and liquidating

assets, and managing his bankruptcy and legal dockets; (iii) Defendants Fischetti,

Crudele and Finger and others have refused to provide information related to The

Fraudulent Enterprise necessary to help Plaintiffs recover their monies; (iv)

Defendant Florida has failed to issue any indictments; (v) Defendant Florida has

failed to provide the Receiver with the necessary funds with which to conduct his

investigation and track down assets and witnesses and (vi) Defendant Florida and its

agents continue to interfere with Plaintiffs' due process rights.

## <u>COUNT I – RICO 18 USC § 1962</u>

121)   Plaintiffs repeated and reallege the allegations as set forth in paragraphs 13 to 105

inclusive as if the same were set forth fully and at length herein.

122)    Plaintiffs are all victims of The Fraudulent Enterprise, as Plaintiffs' monies were deposited, entrusted and/or invested in the EISA accounts or The Trans Con Stock Program or both.

123)    Defendant Pearlman, Defendant Pearlman Companies, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wüllenkemper, McDonald, Tolner, Jans and Chamberlain promoted The Fraudulent Enterprise to Plaintiffs through a series of misrepresentations that Plaintiffs' monies would be placed in high-yield, insured savings accounts at banks which were FDIC insured and which accounts also had AIG or Lloyd's of London insurance.  *See Exhibits 17, 18, 19, 22.*

124)    The primary actors in The Fraudulent Enterprise were Defendant Pearlman, Defendant Pearlman Companies, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and other Defendants.

125)    The secondary actor in The Fraudulent Enterprise was Defendant FISERV and its predecessor Retirement Accounts Inc.

126)    The other negligent participants in The Fraudulent Enterprise were the directors, officers, agents and representatives of Defendant Pearlman and his companies, as well as the directors, officers, agents and representatives of Defendant Banks which allowed Plaintiffs money to be deposited into unauthorized, improper and unsecure accounts from which it was later stolen.

127)    The Plaintiffs represent the single largest majority of persons from Florida and around the United States who were the victims of The Fraudulent Enterprise.

128)    As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered securities – in the form of the EISA accounts - in violation of Florida and US law.

129)    As part of The Fraudulent Enterprise, Plaintiffs were offered and/or sold unregistered securities – in the form of the Trans Con Stocks - in violation of Florida and US law.

130)    As part of The Fraudulent Enterprise, Defendants were received and/or were entrusted with EISA "deposits" in excess of $204 million, exclusive of interest.  *See Exhibit 16* .

131)    As part of The Fraudulent Enterprise, Defendants were received and/or were entrusted with Trans Con Stock Program "monies" in excess of $100 million, exclusive of interest.  *See Exhibit 16.*

132)    The Fraudulent Enterprise involved the providing of writings, correspondence, mailings, faxes, promotional materials and other documents, all of which were intended to and did induce Plaintiffs to entrust their monies to The Fraudulent Enterprise which violated 18 USC § 1953 wire and mail fraud.

133)    As part of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks provided or caused to be provided to Plaintiffs traditional banking documents such as Opening Account Forms, Signature Cards, Social Security and Tax ID Disclosure Forms, Wire Instructions, Mailing Instructions, Contact Information Forms, Deposit Slips, Withdrawal Slips, Account Statements and other documents.  *See Exhibits 3, 6, 12, 13, 18, 19, 20, 21.*

134)    As part of The Fraudulent Enterprise, the Plaintiffs were specifically directed in writing, conveyed by mail and fax, and by telephonic instructions, where their monies were to be deposited, sent and/or transferred.  *See for example, Exhibits 2-14 and 20* .

135)    As part of The Fraudulent Enterprise, it was agreed and/or understood by and between Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, that upon receipt and/or notification that Plaintiffs' monies were deposited and/or received by Defendant FISERV and/or Defendant Banks, the monies were not to be deposited into the intended accounts but instead would be deposited into accounts from which they could later be transferred or drawn upon by Defendant Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent.

136)    As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks failed to deposit or insure the deposit of Plaintiffs' Monies into the intended accounts was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

137)    As and for their part of The Fraudulent Enterprise, this agreement, understanding or practice that Defendant FISERV and Defendant Banks allowed Defendant Pearlman, Defendant Pearlman Companies and/or persons acting on his or their behalf to monies to deposit Plaintiffs' Monies into accounts from which they could later be transferred or drawn upon by Defendant Pearlman and/or Defendant Pearlman Companies, or others acting on his or their behalf, and without Plaintiffs' prior written consent, was intentional, improper, careless, reckless and/or negligent and was in violation of their duties to Plaintiffs.

138)    As and for their part of The Fraudulent Enterprise, it was the agreement, understanding and/or practice that Defendant FISERV and Defendant Banks would periodically change the names on the accounts, or the description of the monies deposited

in the accounts or the monies entrusted to them.   This scheme was accomplished via changes to (i) the monthly statements and/or (ii) the forms which were used to open the EISA accounts or credit the "acquisition" of Trans Con Stock.

139)   During the period of 2002 – 2006, monies from The Fraudulent Enterprise, including Plaintiffs' Monies, were disbursed as follows,  approximately $118 million of monies from Plaintiffs and others was withdrawn improperly and without Plaintiffs' permission to pay offer earlier "depositors" whose monies were stolen or misappropriated by Defendant Pearlman, Defendant Pearlman Companies and/or others acting on his or their behalf.  Disbursement were made as follows:

a)   approximately $34 million went to Defendant Pearlman's closely held corporation Defendant Pearlman Enterprises;

b)   $ 4.2 million went to Defendant Pearlman;

c)   $2.5 million went to Defendant Aegis Consulting;

d)   $2 million went to Defendant Trans Con Records;

e)   $950,000 went to Defendant TC Leasing;

f)   $1.7 million went to Defendant Trans Con Talent;

g)   $710,000 went to Defendant Fashion Rock;

h)   $732,000 went to Defendant Crudele;

i)   $ 700,000 went to Defendant Trans Con Travel;

j)   $350,000 went to Defendant F.F. Station;

k)   $228,000 went to Defendant Trans Country Music;

l)   $218,000 went to Defendant Trans Con Studios;

m)   $135,000 went to Defendant Trans Con Aviation;

n)  Millions more in Trans Con Stock and EISA monies were pledged as collateral to Defendant Banks[5], for Defendant Pearlman's ongoing businesses and properties, including  Church Street Station in Orlando;

o)  Tens of thousands went to pay fees to Defendants FISERV and Defendant Banks;

p)  $10,500 went to Defendant Crist 2006 Gubernatorial Campaign;

q)  Tens of thousands more went to pay for benefits given or made available to Defendant Crist's Gubernatorial Campaign for his use of a private jet, fundraisers, sports luxury boxes to Crist and Kottcamp; and

r)  $4,500 to Bill McCollum for his Attorney General Campaign.

140)    As part of The Fraudulent Enterprise, Defendant Pearlman, Defendant Pearlman Companies and others, misrepresentations also included the fabrication of the existence of professionals, such as accountants, lawyers and auditors, who allegedly were supporting the credibility of the EISA and Trans Con Stock Program Accounts.

141)    In furtherance of The Fraudulent Enterprise, and unbeknownst to Plaintiffs, several entities were created in Germany and elsewhere "offshore" to which Plaintiffs' Monies from the EISA and Trans Con Stock Program Accounts were to be sent.

---

[5] Some the Defendant Banks named in this action who benefitted from, were involved in and/or were negligent in relation to The Fraudulent Enterprise were among those who received monies that can be directly related back to The EISA Accounts and/or Trans Con Stock program.  These are the same banks which Plaintiffs have learned have commenced actions against Defendant Pearlman and/or Defendant Pearlman Companies in various courts seeking to recover real estate and/or other assets based on certain loan transactions which Defendant Banks know, should have known and/or could have discovered through the exercise of reasonable diligence were collateralized with Plaintiffs' Monies.  These Defendant Banks appear to be attempting to improperly gain a priority position ahead of Plaintiffs.  Plaintiffs will be taking the necessary actions to alert the Courts of Defendant Banks wrongful acts and the need to protect the Plaintiffs from being further victimized by Banks involved directly or indirectly in and/or which benefited from The Fraudulent Enterprise and which should forfeit their loans and pay damages to Plaintiffs, instead of trying to gain an unfair position in the litigation to recover monies and damages for persons/entities who/which were truly victimized by The Fraudulent Enterprise.

--------------------

142)    In 2006, millions of dollars started to be sent from the accounts that were supposed to

be maintained at Defendant FISERV and Defendant Banks to the German entities and

elsewhere.

143)    These German entities were intended to be the "offshore type" of vehicles or entities

to which the stolen and/or misappropriated monies were to be sent to companies that

Defendant Pearlman and Mullenkamper created such as Defendant Eurosavings, out of

the reach of Florida and US authorities.

144)    In 2006, several transfers and/or disbursements in the hundreds of thousands and

millions of dollars from the EISA accounts were improperly transferred to accounts at

Defendant Banks for unintended purposes, including payment of monthly loans.

145)    In 2006, millions of dollars of Trans Con Stock (from the Trans Con Stock Program)

was improperly transferred to accounts at Defendant Banks as collateral for loans.

146)    As late as December 2006, a single wire transfer of $ 1 million was solicited and

improperly and/or wrongfully accepted and transferred to accounts by Defendant Bank

America and into accounts from which it knew that Defendant Pearlman was going to

and could steal or misappropriate the monies.  *See Exhibit 20.*  As with other EISA and

Trans Con Stock Program accounts, the necessary, proper and required documentation

related to even this December 2006 deposit, withdrawal and transfer, was not secured.

147)    As part of The Fraudulent Enterprise, Defendants Pearlman and/or Fischetti were the

improperly designated and allowed – by Defendant FISERV and Defendant Banks - to be

signatories on the EISA and Trans Con Stock Program accounts.

148)    As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, quarterly

statements were created and mailed to Plaintiff EISA depositors, which statements

improperly reflected or characterized deposits, interest earned and account balances, as Plaintiffs' Monies were not in the proper, required, insured and protected accounts. *See Exhibits 2-14 .*

149)   As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, the quarterly account statements were created and mailed to Plaintiff EISA depositors that reflected either "Insured Amount" or "Insured Account Balance," when in fact no insurance existed. *See Exhibits 2-14.*

150)   As part of The Fraudulent Enterprise, Defendant FISERV and/or Defendant Banks issued or caused to be issued and mailed to Plaintiffs EISA depositors Federal Tax Forms, such as 1099s. *See Exhibit 10.*

151)   However, at the time the Federal Tax Forms were issued, Defendant FISERV and Defendant Banks knew, should have known and/or could have discovered through the exercise of reasonable diligence that the 1099 Federal Tax Forms they were issuing were from the wrong companies, or the wrong accounts and/or otherwise did not accurately reflect where and with whom Plaintiffs' Monies were supposed to be deposited.

152)   As part of The Fraudulent Scheme, Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks failed to demand the necessary, appropriate,  customary and required forms when opening and operating bank accounts and when receiving and sending wire transfers of the frequency and amount involved with The Fraudulent Enterprise.

153)   As part of The Fraudulent Enterprise and to continue the fraud on Plaintiffs, quarterly account statements were issued for Plaintiffs who had Trans Con Stock Program accounts.  These quarterly account statements, purported to reflect number of shares

owned, interest earned, and in some cases, assurances that the shares were insured or guaranteed.  *See Exhibit 15.*

154)    As part of The Fraudulent Enterprise, Plaintiffs involved with the Trans Con Stock program received these account statements instead of receiving stock certificates and were told that the shares were *"on file"* or had been deposited at or with Defendant Pearlman Companies, or Defendant FISERV and/or Defendant Banks.

155)    Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, as well as their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, associated themselves with The Fraudulent Enterprise, as that is defined herein, and conducted and participated in the affairs of The Fraudulent Enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

156)    Specifically, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, separately and together knowingly, willfully and unlawfully devised and executed a scheme to defraud Plaintiffs through Defendants' use of the enterprise in order to obtain monies from Plaintiffs based upon representations and promises of interest to be earned and guaranteed, opinion letters from purportedly credible and reputable accountants and lawyers, insurance of principal, deposits into fiduciary and individualized accounts  at accredited, reputable and federally insured banks such as Defendants Bank of America, 5/3 Bank and Wachovia, use of

reliable and insured transfer agents such as Defendant FISERV, references from ratings agencies such as Defendant D & B and by other promises and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts.

157)  In furtherance of The Fraudulent Enterprise and scheme to defraud Plaintiffs, certain of the false and fraudulent statements made knowingly by certain Defendants, with the approval, acquiescence and for the benefit of the other Defendants were transmitted through the means of the US mails, in direct violation of 18 USC § 1341.  The mailings made to advance the scheme to defraud Plaintiffs and each of which constitutes a distinct and separate offense in violation of 18 USC § 1341, include but are not limited to the following:

a)  During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided Plaintiffs with opinion letters from purportedly credible and reputable accountants and lawyers when in fact no such accountants or lawyers existed and no such opinions letters were issued.  *See Exhibits 16, 18, 19, 21, 22.*

b)  During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise

provided Plaintiffs with copies of insurance certificates or binders when in fact no such insurance certificates or binders existed.  *See Exhibit 17.*

c) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, and Defendant FISERV and Defendant Banks, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs proofs of deposits into fiduciary and individualized accounts at their accredited, reputable and federally insured banks, when in fact no such deposits were made or existed.  *See Exhibits 2-14.*

d) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain , Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs, interest-earned statements when in fact no such interest payments were made or existed.  *See Exhibits 4-15.*

e) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, McDonald, Tolner, Jans, Chamberlain, Bacchus and Wuellenkemper, and Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, and Defendant FISERV and Defendant

Banks, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs copies of proofs that the transfers, deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV and Defendant Banks, when in fact no such handling, administration and/or oversight existed. *See Exhibits 2-14.*

f) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs references from ratings agencies such as Defendant D & B when in fact no such references existed or were obtained through fraud and misrepresentations to or by D & B. *See Exhibit 22 .*

g) During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, created, mailed, faxed and/or otherwise provided or caused to be provided to Plaintiffs regular monthly account statements indicating that their monies continued to be deposited into Defendant banks, continued to earn the promised interest, was performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw

same, when in fact no such statements existed and the money was being

systematically siphoned off.  *See Exhibits 2-14.*

h)   During the period from 1995 to 2006, in furtherance of The Fraudulent Enterprise,

Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well

as its/their officers, agents, employees and/or other persons acting on their behalf, at

their direction or with their knowledge, created, mailed, faxed and/or otherwise

provided or caused to be provided to Plaintiffs letters related to their accounts when

in fact the accounts or monies were gone or never even existed and their monies were

siphoned off.  *See Exhibits 2-15 .*

158)   Additionally, in furtherance of the above described scheme to defraud Plaintiffs, false

and fraudulent statements were knowingly made by Defendants Pearlman, Fischetti,

Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain,

Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or

other persons acting on their behalf, at their direction or with their knowledge, and with

the approval, acquiescence and for the benefit of others Defendants, which statements

were transmitted by use of the interstate wires, in direct violation of 18 USC § 1343.  The

false and fraudulent wire transmissions were made to advance the scheme to defraud

Plaintiffs, each of which constituted a distinct and separate offense in violation of 18

USC § 1343, including but are not limited to the following:

a)   Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false

and fraudulent statements were made to Plaintiffs about opinion letters from

purportedly credible and reputable accountants and lawyers when in fact no such accountants or lawyers existed and no such opinions letters were issued;

b)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about insurance certificates or binders when in fact no such insurance certificates or binders existed;

c)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about confirmation and proofs of deposits into fiduciary and individualized accounts at accredited, reputable and federally insured banks such as Defendant Banks when in fact no such deposits were made or existed;

d)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about interests accrued when in fact no such interest payments were made or existed;

e)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about proofs that transfers, deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV, when in fact no such handling, administration and/or oversight existed;

f)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about positive references from ratings agencies such as Defendant D & B when in fact no such references existed;

g)  Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about regular monthly statements,

that their monies continued to be deposited into Defendant banks, that those accounts continued to earn the promised interest, were performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw same, when in fact no such statements existed and the money was being systematically siphoned off;

h)   Telephone calls made periodically to Plaintiffs from 1991 to 2006, wherein the false and fraudulent statements were made to Plaintiffs about Plaintiffs' Monies being safeguarded in the individualized accounts at Defendant FISERV and/or Defendant Banks, when in fact the accounts had no monies in them or never existed and their monies were siphoned off.

159)   Additionally, in furtherance of the above described scheme to defraud Plaintiffs, false and fraudulent statements were knowingly made by Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, and with the approval, acquiescence and for the benefit of other Defendants, were transmitted by use of the interstate wires, in direct violation of 18 USC § 1343.  The false and fraudulent wire transmissions were made to advance the scheme to defraud Plaintiffs, each of which constitutes a distinct and separate offense in violation of 18 USC § 1343, including but are not limited to the following:

a)   Facsimiles sent periodically from 1991 – 2006, wherein Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents,

employees and/or other persons acting on their behalf, at their direction or with their knowledge, as well as Defendant FISERV and/or Defendant Banks falsely and fraudulently directed Plaintiffs where to wire their monies and into which individualized accounts their monies were to be deposited at which Defendant banks;  *See Exhibit 15;*

b)   Facsimiles sent periodically from 1991 – 2006, in which Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, gave false or fraudulent information confirming or allegedly confirming receipt of Plaintiffs' Monies which had been wired for deposit into individualized accounts at Defendant Banks;   *See Exhibits 2-14*;

c)   Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent representations to Plaintiffs that there were insurance certificates or binders when in fact no such insurance certificates or binders existed; *See Exhibit 17*;

d)   Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as

its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were proofs of deposits into fiduciary and individualized accounts at accredited, reputable and federally insured banks such as Defendant FISERV and Defendant Banks when in fact no such deposits were made or existed; *See Exhibits 2-14, 17, 18, 19, 21*;

e)   Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were proof of interest-earned statements when in fact no such interest payments were made or existed; *See Exhibits 2-15*;

f)   Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were copies of proofs that the transfers, deposits, wires and accounts were being handled, administered and/or overseen by insured transfer agents such as Defendant FISERV, when in fact no such handling, administration and/or oversight existed; *See Exhibits 2-14, 20*;

g) Facsimiles sent periodically from 1991 – 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were positive references from ratings agencies such as Defendant D & B when in fact no such references existed; *See Exhibit 22*;

h) Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that there were regular monthly statements that their monies continued to be deposited into Defendant banks, continued to earn the promised interest, was performing exactly as promised and would be available for Plaintiffs if, as and when they wished or needed to withdraw same, when in fact no such statements existed and the money was being systematically siphoned off; *See Exhibits 2-14*;

i) Facsimiles sent periodically from 1991 - 2006 wherein Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, made false and fraudulent statements to Plaintiffs that the monies were safeguarded in the individualized accounts at

Defendant Bank, when in fact the accounts were gone or never existed and their monies were siphoned off.  *See Exhibits  1-14, 16*;

160)     Additionally in furtherance of the above described scheme to defraud Plaintiffs, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, committed numerous and direct violations of 18 USC § 1030 by using computers, emails and messaging to induce Plaintiffs to first wire, deposit and/or entrust their monies to the Defendants and later to keep the monies in place until it was secretly withdrawn, and ultimately, to deceive Plaintiffs from realizing the fraud until the monies had been removed from the jurisdiction.

161)     Additionally in furtherance of the above described scheme to defraud Plaintiffs, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, have committed numerous and direct violations of 18 USC § 1952 by traveling in interstate and foreign commerce and using the facilities of interstate and foreign commerce, including the wires and mails, to distribute the proceeds of their unlawful activity and to promote, manage, establish, carry on and to facilitate the promotion, management, establishment and carrying on of their unlawful activities.

162)   Additionally in furtherance of the above described scheme, public officials, agents or representatives, including but not limited to Defendants Crist, others in the OFR and other agents, officials and/or representatives of the State of Florida, involved with the process through which the investigation into The Fraudulent Enterprise, Defendant Pearlman and Defendant Pearlman Companies' fraudulent and unlawful scheme, received monies or other items of value, at a time when the investigations were discontinued or delayed with the result that prosecutions were and have never been brought to date, and which acts are in violation of 18 USC § 1952 and 18 USC § 201.

163)   The above described enterprise and scheme to defraud and fraud was a "Hub & Spoke" conspiracy with Pearlman at the center of the conspiracy and enterprise and each of the Defendant individuals and/or businesses performing their acts in furtherance of the conspiracy.

164)   The above described enterprise and scheme to defraud and fraud required the active or passive involvement of Defendant FISERV, Defendant Banks which would cooperate with Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, to transfer the accounts and individuals in insurance and/or ratings agencies who would assist and/or facilitate the fraud being perpetrated against the Plaintiffs.

165)   The above described enterprise required the involvement of Defendant Crist who was in a position of authority in the State of Florida and who could provide assistance

to Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent

Enterprise by simply failing to investigate and/or take action in response to the

complaints that were being made and/or which came to the attention of the State of

Florida, most notably the discovery in 2003 that Defendant Pearlman and Defendant

Pearlman Companies were violating Florida law through unlawful sale of securities

related to the EISA accounts. *See Exhibit 16.*

166)   Defendant Florida officials, including Defendant Crist and persons in the OFR,

were aware, should have known and/or could have through the exercise of reasonable

due diligence could have discovered that the activities by Defendant Pearlman and

Defendant Pearlman Companies were fraudulent, improper, illegal and/or in

furtherance of The Fraudulent Enterprise, and should have taken action to stop it.

167)   All Defendants benefited from Defendants Pearlman, Defendant Pearlman

Companies and the other principal actors such as The Fraudulent Enterprise and

scheme to defraud.

168)   The illegal predicate acts of mailing, faxing and use of the telephones described in

paragraphs 142 to 144 above constitute a pattern of racketeering activity as defined

by 18 USC § 1962 et seq.

169)   By reason of the aforementioned racketeering enterprise activities, Defendants

Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well

as its/their officers, agents, employees and/or other persons acting on their behalf, at

their direction or with their knowledge, ability to defraud Plaintiffs was immeasurably

enhanced because the illegal operation of the enterprise facilitated the fraud and aided

its concealment, thereby damaging Plaintiffs in their business and/or property.

170)    The EISA and Trans Con Stock Program Accounts constituted an enterprise

operating in and affecting interstate and foreign commerce.

171)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman

Companies, knowingly, willfully and unlawfully conspired, agreed and/or combined

together with each other to associate with, conduct, participate in and further the

affairs of  the enterprise through the use of the US mails and wires.

172)    The aforedescribed acts as set forth in paragraphs 142 to 144, which it was

described the instances in which Defendants Pearlman, Defendants Fischetti, Crudele,

Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain,

Defendant Pearlman Companies, knowingly, willfully and unlawfully conspired,

agreed and/or combined together with each other to use the US mails and wires in

furtherance of the affairs of the enterprise were unlawful, illegal and in violation of

18 USC §§ 1341 and 1343.

173)    Each of the aforedescribed use of the US mails and wires in furtherance of the

affairs of the enterprise constituted a separate violation of 18 USC §§ 1341 and 1343.

174)    By reason of the aforementioned use of the US mails and wires in furtherance of

the affairs of the racketeering enterprise and in violation of 18 USC §§ 1341 and 1343

immeasurably enhanced Defendants ability to defraud Plaintiffs, facilitated the fraud

and aided its concealment, thereby damaging Plaintiffs in their business and/or

property.

175)   WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

176)

## COUNT II - VIOLATION OF THE SECURITIES ACTS OF 1933 & 1934 and SEC RULE 10 b (5)

177)   Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

178)   Sections 5(a), 5(c) and 17(a) of the Securities Act of 1933 and Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission Rule 10b-5 provide causes of action for the unlawful sale of unregistered securities, the sale of securities by unlicensed persons and companies, and for fraudulent inducement in the sale of securities.

179)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies are individuals and/or entities subject to the Securities Acts of 1933 and 1934, as they were selling securities to Plaintiffs – financial instruments with the expectation of a return on the investment, and the various guarantees enumerated herein.

180)   Through The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge and made material, false, and fraudulent misrepresentations to Plaintiffs regarding the EISA and Trans Con Stock Program accounts.

181)   Defendants as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, sold unregistered securities in violation of the Securities Acts of 1933 and 1934, and without complying with the requirements under federal law for selling securities.

182)   Defendants as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge also sold unregistered securities without a license to sell _any_ securities whatsoever.

183)   As a result of Defendants' actions, Plaintiffs have lost the money they invested in The EISA and Trans Con Stock Programs Accounts.

184)   WHEREFORE, Plaintiffs request the Court to enter a judgment in favor of Plaintiffs and against the Defendants for an award of actual damages, prejudgment interest, costs, attorneys' fees, and any other relief the Court deems just and proper under the circumstances.

## COUNT III - VIOLATION OF 14th AMENDMENT

185)   Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

186)   Florida Statute 768.28 states in pertinent part:

**768.28**        ***Waiver of sovereign immunity in tort actions . . .***

*(1) In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.   .......*

*(5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000. However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature. Notwithstanding the limited waiver of sovereign immunity provided herein, the state or an agency or subdivision thereof may agree, within the limits of insurance coverage provided, to settle a claim made or a judgment rendered against it without further action by the Legislature, but the state or agency or subdivision thereof shall not be deemed to have waived any defense of sovereign immunity or to have increased the limits of its liability as a result of its obtaining insurance coverage for tortious acts in excess of the $100,000 or $200,000 waiver provided above. The limitations of liability set forth in this subsection shall apply to the state and its agencies and subdivisions whether or not the state or its agencies or subdivisions possessed sovereign immunity before July 1, 1974.*

*(6)(a) An action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency, and also, except as to any claim against a municipality or the Florida Space Authority, presents such claim in writing to the Department of Financial Services, within 3 years after such claim accrues and the Department of Financial Services or the appropriate agency denies the claim in writing; except that, if such claim is for contribution pursuant to s. **768.31**, it must be so presented within 6 months after the judgment against the tortfeasor seeking contribution has become final by lapse of time for appeal or after appellate review or, if there is no such judgment, within 6 months after the tortfeasor seeking contribution has either*

*discharged the common liability by payment or agreed, while the action is pending against her or him, to discharge the common liability.*

*(b) For purposes of this section, the requirements of notice to the agency and denial of the claim pursuant to paragraph (a) are conditions precedent to maintaining an action but shall not be deemed to be elements of the cause of action and shall not affect the date on which the cause of action accrues*

*(d) For purposes of this section, complete, accurate, and timely compliance with the requirements of paragraph (c) shall occur prior to settlement payment, close of discovery or commencement of trial, whichever is sooner;*

*The failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 6 months after it is filed shall be deemed a final denial of the claim for purposes of this section. For purposes of this subsection, in medical malpractice actions, the failure of the Department of Financial Services or the appropriate agency to make final disposition of a claim within 90 days after it is filed shall be deemed a final denial of the claim. The provisions of this subsection do not apply to such claims as may be asserted by counterclaim pursuant to s. **768.14***

187)   42 U.S.C. § 1983 states, in pertinent part *"every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."*

188)   As related to the facts of this case, among other things, F.S. 768.28:

a)   Is vague with regard to the definitions and limitations for damages per person and imposes a $100,000 per person damages limitations when losses for many of the individual or corporate plaintiffs are in the hundreds of thousands or millions of dollars and which limitations deprives plaintiffs of due process and leaves them with no effective remedy for wrongful acts in a manner which is inconsistent with other Florida Statutes and policies of Florida enforcement agencies;

b) Imposes an unconstitutional statutory waiting period of 6 months before an action can be commenced which is unduly burdensome and prejudicial, the Statute fails to provide remedies for the type of wrongful conduct and ongoing damages suffered by Plaintiffs for which there is no redress;

c) Violates Plaintiffs' Due Process Rights to prevent ongoing wrongful conduct from which Plaintiffs will continue to suffer damages for which there is no redress;

d) Fails to include a provision through which Plaintiffs who suffer ongoing damages for which there is no redress are able to take actions to hold Florida, its agencies and others responsible for the past and ongoing potential wrongful acts of their Chief Executive & Legal Officers, departments charged with protecting the public from wrongful acts and enterprises such as those complained of in this complaint; and

e) Fails to provide adequate remedies for intentional acts and *ultra vires* acts of the states Chief Executive and Legal Officer, for which the Florida Legislature has enacted no remedy and for which it is anticipated that State of Florida will claim sovereign immunity.

189)   As set forth above, Defendant Florida, Defendant Crist and other officials, agents and/or representatives of Florida were negligent in the handling of the investigation and prosecution of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge, with regard to the numerous prior fraudulent schemes and unlawful sales of EISA "securities" which led to Floridians and others losing hundreds of millions of dollars.  This negligence creates liability against

Florida for victims of The Fraudulent Enterprise.  In addition to negligence, the specific

acts as alleged against Defendant Charlie Crist directly relate to a state actor's violations

of federal law, directly relate to negligence that has to be imputed to Defendant Florida,

to malfeasance of the office of Attorney General, and ***ultra vires*** acts by Defendant Crist

while campaigning for Governor of Florida.

190)    Further, the past and ongoing acts by Defendant Florida and its agents in the Office of

Financial Regulation have caused further delays and interference with the impartial

investigation into The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti,

Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain

and Defendant Pearlman Companies.  Further, these actions may implicate federal

statutes regarding bribery, obstruction of justice and receiving stolen property via mail,

wire, check and affecting interstate commerce.

191)    Further the allegations and evidence as set forth herein in greater detail suggest

that there may have been violations of Florida and US laws by officials of the State of

Florida, including but not limited to violations of 18 USC §§ 1952 and 201 and

Florida Statutes Section 102 related to election campaign contributions, and other

laws related to acceptance of monies by public officials from persons under

investigation, all of which make the application of Florida Statutes § 768.28

unconstitutional in these circumstances.

192)    According to the 14th and 11th amendment doctrines laid out in cases such as

*Alden v. Maine*, 527 U.S. 706 (1999) and *College Savings Bank* v. *Florida Prepaid*

*Post-Secondary Education Expense Board,* 527 U.S. 666 (1999)*,* and related cases, if

violations of federal law by state officials have caused Plaintiffs and others to lose

property or property rights, Plaintiffs can argue for a waiver of state sovereign
immunity in order to correct the wrong, and/or argue that in this circumstance,
statutes limiting Plaintiffs' recovery against the State of Florida are unconstitutional
violations of Plaintiffs' substantive and procedural due process rights.

193)   Additionally, these state actors' actions taking campaign donations and other
benefits from what likely were EISA and Stock Program monies, could be considered
a State or government taking of Plaintiffs' assets without just compensation -- another
basis for 14th amendment redress.

194)   Plaintiffs maintain that this case amounts to a case of first impression, and also a
case of great public importance.

195)   Also, the Florida Statutes Section 768.28 six (6) month waiting period as applied to
these Plaintiffs is unconstitutional because it will allow Defendants to (i) further hide,
conceal, transfer, dispose of assets and (ii) destroy evidence.

196)   The 6 month waiting period is also unconstitutional because certain Plaintiffs are
elderly, and without the ability to prosecute these claims, may have no prospect of being
able to sustain themselves financially, or to see a remedy within a reasonable period of
time, given their age.

197)   The definitions and cap on damages is vague and purports to improperly limit
Plaintiffs' ability to recover the full amount of their losses which were caused or
contributed to by the wrongful, negligent or potentially improper and/or unlawful acts of
Defendant Crist, the former Attorney General and now Governor.

198)   Wherefore, Plaintiffs prays that the Court declare Florida Statutes § 768.28 as
unconstitutional as applied to these circumstances.

## COUNT IV – CONSPIRACY

199)     Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

200)     The EISA and Trans Con Stock Program Accounts constituted an enterprise operating in and affecting interstate and foreign commerce.

201)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge knowingly, willfully and unlawfully did conspire, agree and/or combine together with each other to associate with, conduct, participate in and further the affairs of  the enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).  Such conspiracy in unlawful and violates 18 USC § 1962 (d).

202)     The object of the conspiracy was to associate with, participate in, and conduct the affairs of The Fraudulent Enterprise, in part, by inducing Plaintiffs to deposit, wire and/or entrust monies into accounts from which they could be removed; and to mail or wire funds to certain accounts from which they would later be withdrawn unlawfully, illegally and in violation of the promises to, agreements with and/or representations made to Plaintiffs.

203)     The overt acts committed or facilitated by Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their

knowledge to execute and accomplish the above described unlawful conspiracy include but are not limited to the illegal acts as set forth in paragraphs 107 to 153 (from Count I) above, and specifically the predicate acts as described in paragraphs 142 to 144 constitute a pattern of racketeering activity as defined in 18 USC § 1962 et seq.

204)    By reason of the aforementioned racketeering enterprise activities, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, as well as its/their officers, agents, employees and/or other persons acting on their behalf, at their direction or with their knowledge ability to defraud Plaintiffs was immeasurably enhanced because the illegal operation of the enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiffs in their business and/or property.

205)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT V – AIDING & ABETTING

206)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

207)    The EISA and Trans Con Stock Program Accounts constituted an enterprise operating in and affecting interstate and foreign commerce.

208)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, associated themselves with the enterprise and conducted and participated in the affairs of the enterprises through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

209)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, separately and together, knowingly, willfully and unlawfully devised and executed a scheme to defraud Plaintiffs in order to induce Plaintiffs to deposit, wire and/or entrust monies into accounts from which they could be removed, by means of false and fraudulent statements, representations or promises or through the commission of numerous criminal acts.

210)    The illegal predicate acts as set forth in paragraphs 107 to 153 (from Count I) above, and specifically the predicate acts as described in paragraphs 142 to 144 constitute a pattern of racketeering activity as defined in 18 USC § 1962 et seq.

211)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, each had knowledge of the illegal operation of the enterprises and lent substantial assistance to each other and to The Fraudulent Enterprise by associating themselves with the enterprises and conducting and participating in the affairs of the enterprise through a pattern of racketeering activity in violation of 18 USC § 1962 ( c).

212)    The acts by and through which Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, aided and abetted each other in the affairs of The Fraudulent Enterprise were illegal.

213)   The acts of Defendant Crist as former Attorney General who failed to prosecute Defendant Pearlman and/or Defendant Pearlman Companies and failed to take necessary action based upon the knowledge he and his offices had in 2003 about unlawful and illegal sales or marketing of the EISA accounts, also aided and abetted the affairs of The Fraudulent Enterprise and were improper, negligent, careless, reckless and/or illegal.

214)   The acts of Defendant FISERV and Defendant Banks in assisting Defendant Pearlman and/or Defendant Pearlman Companies with the transfer of monies and the failure to maintain the monies in safeguarded accounts also aided and abetted the affairs of The Fraudulent Enterprise and were improper, negligent, careless, reckless and/or illegal.

215)   By reason of the aforementioned aiding and abetting of the racketeering enterprise activities, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies ability to defraud Plaintiffs was immeasurably enhanced because the illegal operation of the enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiffs in their business and/or property.

WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT VI – COMMON LAW FRAUD

216) Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

217) Defendants Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies entered into a scheme whereby they agreed to defraud Plaintiffs in order to induce Plaintiffs to deposit, wire and entrust monies to them.

218) Pursuant to that scheme, Defendant Pearlman, Fischetti, Crudele, McDonald, Tolner, Jans, Chamberlain and Defendant Pearlman Companies knowingly and with fraudulent intent, with the knowledge, approval, assistance and acquiescence of the other Defendants, made fraudulent misrepresentations to Plaintiffs regarding interest to be earned and guaranteed, opinion letters from purportedly credible and reputable accountants and lawyers, insurance of principal, deposits into fiduciary and individualized accounts  at accredited, reputable and federally insured banks such as Defendant Banks, use of reliable and insured transfer agents such as Defendant FISERV, references from ratings agencies such as Defendant D & B and by other promises and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts.

219) In reliance upon the fraudulent misrepresentations, Plaintiffs deposited, wired and/or entrusted Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, with hundreds of millions of dollars.

220) As a direct result of The Fraudulent Enterprise and based on the fraudulent misrepresentations, after Plaintiffs' Monies were deposited, wired and/or entrusted to

Defendant Pearlman, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks, the monies were wrongfully misappropriated.

221)     By reason of the aforementioned fraudulent and/or misleading statements, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

222)     WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT VII – MISREPRESENTATION

223)     Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

224)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies knowingly, willfully and unlawfully did conspire, agree and/or combine together with each other to associate with, conduct, participate in and further the affairs of The Fraudulent Enterprise through a pattern making knowingly false and/or misleading statements which were designed to induce Plaintiffs to deposit, wire and entrust monies to them.

225)     The aforesaid fraudulent and/or misleading statements included but were not limited to representations and promises of interest to be earned and guaranteed, opinion letters from purportedly credible and reputable accountants and lawyers, insurance of principal, deposits into fiduciary and individualized accounts  at accredited, reputable and federally insured banks such as Defendant Banks, use of reliable and insured transfer agents such as Defendant FISERV, references from ratings agencies such as Defendant D & B and by other promises and representations which were fraudulent, and/or part of the criminal and/or illegal enterprise and/or acts.

226)     At the time the aforesaid fraudulent and/or misleading statements were made, Defendants knew them to be false and intended to cause Plaintiffs to rely upon them to their detriment.

227)     At the time the aforesaid fraudulent and/or misleading statements were made, Plaintiffs had no way of knowing or discovering that the statements were false or misleading.

228)     The purpose of the aforesaid fraudulent and/or misleading statements was to induce Plaintiffs to deposit, wire and/or entrust monies into accounts from which they could be removed.  to mail or wire funds to certain accounts from which they would later be withdrawn unlawfully, illegally and in violation of the promises to, agreements with and/or representations made to Plaintiffs.

229)     The Plaintiffs relied on the aforesaid fraudulent and/or misleading statements to their detriment.

230) By reason of the aforementioned fraudulent and/or misleading statements, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

231) WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper including equitably relief.

## <u>COUNT VIII – BREACH OF CONTRACT</u>

232) Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

233) Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise agreed and contracted to pay Plaintiffs interest at a fixed and guaranteed rate, were to maintain insurance of Plaintiffs principal, were to deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited, reputable and federally insured banks such as Defendant Banks, were to use reliable and insured transfer agents such as Defendants FISERV, and were to safeguard and return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested its return.

234) Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise breached the terms of the contract by failing to pay Plaintiffs interest at a

fixed and guaranteed rate, failing to maintain insurance of Plaintiffs principal, failing

to deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,

reputable and federally insured banks such as Defendant Bank, failing to use reliable

and insured transfer agents such as Defendant FISERV, and failing to safeguard and

return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested

its return.

235)    By reason of the aforementioned breach of contract, Plaintiffs (i) sustained

damages in their business and/or property, and (ii) suffered physical, emotional and

other damages.

236)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants

FISERV and Defendant Banks, for an award of actual damages, punitive damages,

prejudgment interest, costs, attorney's fees, and such other relief as this Court deems

necessary and proper.


## <u>COUNT IX – FRAUDULENT INDUCEMENT</u>

237)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I)

inclusive as if the same were set forth fully and at length herein.

238)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent

Enterprise entered into a scheme whereby they fraudulently Plaintiffs to entered into a

contract with them.

239)    Under the terms of the contract, Defendant Pearlman, Defendant Pearlman
Companies and The Fraudulent Enterprise were to pay Plaintiffs interest at a fixed
and guaranteed rate, were to maintain insurance of Plaintiffs principal, were to
deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,
reputable and federally insured banks such as Defendant Banks, were to use reliable
and insured transfer agents such as Defendant FISERV, and were to safeguard and
return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested
its return.

240)    Defendant Pearlman, Defendant Pearlman Companies and The Fraudulent
Enterprise breached the terms of the contract by failing to pay Plaintiffs interest at a
fixed and guaranteed rate, failing to maintain insurance of Plaintiffs principal, failing
to deposit Plaintiffs' Monies into fiduciary and individualized accounts  at accredited,
reputable and federally insured banks such as Defendant Banks, failing to use reliable
and insured transfer agents such as Defendant FISERV, and failing to safeguard and
return Plaintiffs' Monies, including principal and interest, when Plaintiffs requested
its return.

241)    By reason of the aforementioned fraudulent inducement and breach of contract,
Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered
physical, emotional and other damages.

242)    WHEREFORE, the vulnerable Plaintiffs demand judgment against Defendants
Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,
McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as
well as Defendants FISERV and Defendant Banks, for an award of actual damages,

punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT X – BREACH OF FIDUCIARY DUTIES

243)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

244)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies entered into a scheme whereby they induced Plaintiffs to wire, transfer, deposit and/or entrust monies to them for their safekeeping.

245)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies held themselves out and represented to Plaintiffs that they were accepting the monies for safekeeping and to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

246)    Under the terms of the contract, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies became trustees and/or fiduciaries over the monies which were entrusted to them.

247)    As trustees and/or fiduciaries over the monies entrusted to them, Defendants had an enhanced level of duty and obligations to Plaintiffs, which required Defendants to

taken additional and independent actions to insure that the terms of the contracts would be honored and Plaintiffs' monies would be safeguarded.

248)     These duties required Defendants as trustees and/or fiduciaries to independently insure that Plaintiffs were paid interest at a fixed and guaranteed rate, insurance was maintained to cover Plaintiffs principal, monies were deposit into fiduciary and individualized accounts  at accredited, reputable and federally insured banks, reliable and insured transfer agents were used to process the transfer, deposits and entrustment of Plaintiffs' Monies, and Plaintiffs' Monies, including principal and interest, would be returned when Plaintiffs requested them.

249)     Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies breached these trust and/or fiduciary duties.

250)     Defendant FISERV and Defendant Banks were involved with the scheme whereby Plaintiffs were induced to wire, transfer, deposit and/or entrust monies to accounts at their institutions for safekeeping.

251)     Defendant FISERV and Defendant Banks held themselves out and represented to Plaintiffs that they were accepting the monies for safekeeping and to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

252)     Under the terms of the contract, Defendant FISERV and Defendant Banks became trustees and/or fiduciaries over the monies which were entrusted to them.

253)     As trustees and/or fiduciaries over the monies entrusted to them, Defendant FISERV and Defendant Banks had an enhanced level of duty and obligations to

--------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 71*

Plaintiffs, which required Defendants to taken additional and independent actions to insure that the terms of the contracts would be honored and Plaintiffs' Monies would be safeguarded.

254)    These duties required Defendant FISERV and Defendant Banks as trustees and/or fiduciaries to independently insure that Plaintiffs were paid interest at a fixed and guaranteed rate, insurance was maintained to cover Plaintiffs principal, monies were deposit into fiduciary and individualized accounts  at accredited, reputable and federally insured banks, reliable and insured transfer agents were used to process the transfer, deposits and entrustment of Plaintiffs' Monies, and Plaintiffs' Monies, including principal and interest, would be returned when Plaintiffs requested them.

255)    Defendant FISERV and Defendant Banks breached these trust and/or fiduciary duties.

256)    By reason of the aforementioned breach of fiduciary duties, Plaintiffs were (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

257)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XI – MISAPPROPRIATION

258)   Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

259)   Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks were part of The Fraudulent Enterprise through which Plaintiffs were induced to wire, transfer, deposit and/or entrust monies to them for their safekeeping.

260)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks held themselves out and represented to Plaintiffs that they were accepting the monies for safekeeping and to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

261)   In direct contravention to the representations, promises, guarantees, duties and/or obligations to Plaintiffs, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks facilitated, allowed and/or failed to take the necessary and prudent steps to insure that Plaintiffs' monies were safeguarded.

262)   In direct contravention to the representations, promises, guarantees, duties and/or obligations to Plaintiffs, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain, Defendant Pearlman Companies, Defendant FISERV and Defendant Banks misappropriated

and/or allowed the misappropriation of Plaintiffs' Monies and/or allowed Plaintiffs' Monies to be used for purposes which were unintended, not agreed to and/or were without Plaintiffs knowledge and/or permission.

263)    By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

264)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XII – NEGLIGENCE

265)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

266)    Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies were negligent in the manner they communicated with Plaintiffs, dealt with Plaintiffs' Monies and/or handled Plaintiffs' accounts.

267)    Defendant FISERV and Defendant Banks were negligent in the manner they allowed or caused Plaintiffs' Monies to be deposited into and transferred out of accounts.

268)     Defendant FISERV and Defendant Banks were negligent in the manner they
allowed or caused account statements to be sent to Plaintiffs about the monies which
were supposed to be deposited into accounts for their safekeeping.

269)     Defendant D & B was negligent in its investigation and reporting about the status
and financial condition of Defendant Pearlman Companies.

270)     Defendant Florida was negligent in its handling of the investigation into and
failure to prosecute Defendant Pearlman, Defendant Pearlman Companies and The
Fraudulent Enterprise from 2003 to 2006.

271)     Defendant Crist was negligent in his failure to avoid the appearance of
impropriety, his potential misuse and failure to honor the duties and requirements of
his office in its handling of the investigation into and failure to prosecute Defendant
Pearlman, Defendant Pearlman Companies and The Fraudulent Enterprise from 2003
to 2006, as well as his failure to disclose the true relationship he had with Defendant
Pearlman and Defendant Pearlman Companies and the exact characterization and
reporting of the monies and other benefits he received from Defendant Pearlman and
Defendant Pearlman Companies during the 2006 Gubernatorial Campaign.

272)     In direct contravention to the representations, promises, guarantees, duties and/or
obligations to Plaintiffs, each of the aforedescribed Defendant was negligent, careless
and/or reckless and failed to take the necessary and prudent steps to insure that
Plaintiffs' monies were safeguarded.

273)     As a direct and proximate result of Defendants negligence, Plaintiffs' Monies
were misappropriated, withdrawn and/or and used them for purposes which were

unintended, not agreed to and/or were without Plaintiffs knowledge and/or permission.

274)     By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

275)     WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT XIII – NEGLIGENT SUPERVISION

276)     Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

277)     Defendants had a duty to supervise each and every one of their employees, officers, representatives and/or agents to insure that the monies which were wired, transferred, deposited and/or entrusted to them for their safekeeping were safe and could not be removed or withdrawn without Plaintiffs express prior written permission.

278)     Defendants failed to supervise their employees, officers, representatives and/or agents involved with the monies which were wired, transferred, deposited and/or entrusted to them for their safekeeping by Plaintiffs.

279)    As a direct and proximate result of Defendants failed to properly supervise their

employees, officers, representatives and/or agents involved with the monies which

were wired, transferred, deposited and/or entrusted to them by Plaintiffs, the monies

were in fact not safe, were removed and/or were withdrawn without Plaintiffs express

prior written permission.

280)    By reason of the aforementioned acts, Plaintiffs were (i) sustained damages in

their business and/or property, and (ii) suffered physical, emotional and other

damages.

281)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants

FISERV and Defendant Banks, for an award of actual damages, punitive damages,

prejudgment interest, costs, attorney's fees, and such other relief as this Court deems

necessary and proper.

## COUNT XIV – UNJUST ENRICHMENT

282)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I)

inclusive as if the same were set forth fully and at length herein.

283)    As a direct result of Defendants scheme to defraud Plaintiffs, illegal enterprise, or

other fraudulent, unlawful and/or negligent acts as described above, Defendants came

into possession of hundreds of millions of dollars which were not theirs and which

they accepted for safekeeping and which were to be returned to Plaintiffs at a later

date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

284)   By their acts, Defendant Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies became unlawfully enriched through the hundreds of millions of dollars that they misappropriated from Plaintiffs and which were used by Defendants for purposes which were unintended, not agreed to and/or were without Plaintiffs' knowledge and/or permission.

285)   By reason of the aforementioned acts, Plaintiffs (i) sustained damages in their business and/or property, and (ii) suffered physical, emotional and other damages.

286)   WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## <u>COUNT XV – EQUITABLE DISGORGEMENT</u>

287)   Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

288)   As a direct result of Defendants scheme to defraud Plaintiffs, illegal enterprise, or other fraudulent, unlawful and/or negligent acts as described above, Defendants became unlawfully enriched through the hundreds of millions of dollars which came

into their possession, which was not theirs and which they accepted for safekeeping and which were to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

289)    It is unlawful, illegal and inequitable for Defendants to be permitted to retain the monies that came into their possession, which was not theirs and which they accepted for safekeeping and which was to be returned to Plaintiffs at a later date and according to the terms of the contracts entered into with and representations made to Plaintiffs.

290)    By reason of the aforementioned acts, Defendants should be compelled to equitably disgorge the hundreds of millions of dollars which came into their possession, and/or all other property, assets and/or monies which were acquired through the use of Plaintiffs' monies or which are or may be other assets of Defendants.

291)    WHEREFORE, the Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, Defendant Crist, as well as Defendants FISERV and Defendant Banks, for an award of directing the disgorgement of all monies they received from The Fraudulent Enterprise, as well as attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT XVI - VIOLATION OF FLORIDA SECURITY AND INVESTOR PROTECTION ACT-MISREPRESENTATIONS AND OMISSIONS IN THE SALE OF AN INVESTMENT

292)    Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I) inclusive as if the same were set forth fully and at length herein.

--------------------

293)    Florida Statute § *517.301* provides a cause of action for, among other things, misrepresentations and omissions in connection with the offer, sale or purchase of an *"investment"*.

294)    *"Investment"* is defined under § 517.301(2) as a commitment of money or property principally induced by a representation that an economic benefit may be derived from such commitment.

295)    In this case and as described above, The Fraudulent Enterprise involved a commitment of money that was induced principally by the written and oral representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies that an economic benefit would be derived from such commitment and by the written representations and documents submitted to plaintiffs by Defendant FISERV and Defendant Banks that the "investment" would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated.

296)    The above described transactions constitute an *"investment"* as that term is defined under F.S. § 517.301(2).

297)    Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, and Defendant FISERV and Defendant Banks came into possession of *"investment monies"* from Plaintiffs by misrepresentations and omissions of material facts in connection with the offer, sale or purchase of an *"investment"* specifically in

violation of F.S. §517.301 of the Florida Securities Investor Protection Act.

298)    In connection with the *"investment"* described above, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, were obligated to but failed to disclose material facts to the Plaintiff in violation of F.S. § 517.301, Florida Securities Investor Protection Act.

299)    In connection with the *"investment"* described above, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, enjoyed and/or benefited from and/or neglected their normal, customary and required duties to plaintiffs as part of The Fraudulent Enterprise and scheme to defraud.  As such, Defendants Pearlman, Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, engaged in a *"business"* which was operated as a fraud and which conduct violated F.S. § 517.301.

300)    As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

301)    The aforementioned Florida Statutes also provide certain statutory remedies and

damages, including reimbursement of the actual losses, reasonable attorney's fee and

other damages.

302)   WHEREFORE, Plaintiff demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants

FISERV and Defendant Banks, for an award of actual damages, prejudgment interest,

costs, attorney's fees, and such other relief as this Court deems necessary and proper.

**COUNT XVII - VIOLATION OF FLORIDA SECURITY AND INVESTOR
PROTECTION ACT-MISREPRESENTATIONS AND "OMISSIONS" IN
CONNECTION WITH RENDERING INVESTMENT ADVICE**

303)   Plaintiffs repeat and reallege paragraphs 13 to 120 and 122 to 174 (from Count I)

inclusive as if the same were set forth fully and at length herein.

304)   Florida Statute § 517.301 provides a cause of action for, among other things,

misrepresentations and omissions in connection with the *"rendering of investment*

*advice"*.

305)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman

Companies, recommendation for Plaintiffs to "invest" in The Fraudulent Enterprise,

either in The EISA or Trans Con Stock Programs Accounts is *"rendering of*

*investment advice"* in the context of F.S. § 517.301.

306)   Based on the facts as described above, Defendant FISERV and Defendant Banks

written representations and documents provided to Plaintiffs regarding how the

"investment" would be handled, that the investment would be safeguarded and would

be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated. These representations can also be construed as *"rendering of investment advice"* in context of F.S. § 517.301.

307) Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, obtained and/or caused Plaintiffs to *"invest"* money by means of a scheme to defraud, and misrepresentations and omissions of material facts related to and in connection with the *"rendering of investment advice"* in violation of F.S. § 517.301 - The Florida Securities Investor Protection Act.

308) Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks also omitted to disclose material facts to Plaintiffs about the alleged economic benefits that would be derived from their *"investment"* and how the *"invested monies"* would be handled according to conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, constitutes a further violation of F.S. § Section 517.301 – The Florida Securities Investor Protection Act.

309) In connection with the transaction described above, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks employed a scheme to defraud and engaged in a business which

was operated as a fraud, as previously set forth herein, and which conduct violates F.S. § 517.301.

310)     As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

311)     The aforementioned Florida Statutes also provide certain statutory remedies and damages, including reimbursement of the actual losses, reasonable attorney's fee and other damages.

312)     WHEREFORE, Plaintiff demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

### COUNT XVIII - VIOLATION OF FLORIDA SECURITY AND INVESTOR PROTECTION ACT—MISREPRESENTATIONS AND OMISSIONS IN THE SALE OF A SECURITY

313)     Plaintiffs repeat and reallege paragraphs 13 to 120, 122 to 174 (from Count 1) and 273 to 280 (from Count XVIII) inclusive as if the same were set forth fully and at length herein.

314)     In addition to regulating misrepresentations and "omissions" in connection with the "rendering of investment advice" F. S. § *517.301* also regulates and governs misrepresentations and omissions in connection with the offer, sale or purchase of an

investment.

315)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts were also made in connection with the actual offer, sale and purchase of an investment, not just the providing of advice.

316)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks obtained monies from Plaintiffs and/or caused Plaintiffs to wire, deposit, transfer and/or give over monies based on misrepresentations and omissions of material facts that were made in connection with the offer, sale or purchase of an "investment".

317)   In furtherance of The Fraudulent Enterprise, Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks omitted to disclose material facts to Plaintiffs so as to induce and/or cause Plaintiffs to wire, deposit, transfer and/or give over monies as part of or in connection with the offer, sale or purchase of an "investment".

318)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks, were actively and/or passively involved a The Fraudulent Enterprise and scheme to defraud and were engaged in "businesses" which operated as a fraud.

--------------------

319)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks, aforesaid acts inducing Plaintiffs to invest and/or put their monies into The EISA and/or The Trans Con Stock Program Accounts, violated F. S. § *517.301* as they were acts taken in connection with the offer, sale or purchase of an investment.

320)   As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

321)   The aforementioned Florida Statutes also provide certain statutory remedies and damages, including reimbursement of the actual losses, reasonable attorney's fee and other damages.

322)   WHEREFORE, Plaintiff demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper.

### COUNT XIX - VIOLATION OF FLORIDA SECURITY AND INVESTOR PROTECTION ACT-SALE OF AN UNREGISTERED SECURITY

323)   Plaintiffs repeat and reallege paragraphs 13 to 120, 122 to 174 (from Count 1) and 273 to 280 (from Count XVIII) inclusive as if the same were set forth fully and at

length herein.

324)   In addition to regulating misrepresentations and "omissions" in connection with the "rendering of investment advice" and the actual "offer, sale and purchase" of investments as governed by F. S. § *517.301,* F.S. 517.021 governs activities related to "securities".

325)   F.S. § 517.021 (20) (f) and (q) define a "security" as any (i) evidence of indebtedness and/or (ii) investment contract.

326)   The EISA Accounts and The Trans Con Stock Program being sold through The Fraudulent Enterprise are "securities" as defined by F.S. § 517.021(20)(f) and (q).

327)   F.S. § 517 required that any person who sought to offer or sell a security such as The EISA Accounts and The Trans Con Stock Program had to be registered as "issuers", "dealers" or "associated persons".

328)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies were not registered as "issuers", "dealers" or "associated persons" as required by F. S. § 517.

329)   Defendant Pearlman Companies were not authorized to engage in the business they conducted through the offerings and/or sales, or the promotion, solicitation and/or marketing of The EISA and Trans Con Stock Program Accounts, by the Financial Institutions Codes of the State of Florida or the relevant codes of any state or the US government.

330)   The EISA and Trans Con Stock Program Accounts involved evidence of indebtedness and were investment contracts as those term are defined by F.S. § 517.

021(20)(f) and (q).

331)  The EISA and Trans Con Stock Program Accounts were offered and sold by

entities and persons who were not registered and/or authorized to do so by F.S. § 517.

021.

332)  The offering and sale of EISA and Tran Con Stock Program Accounts were

violations of F.S. § 517. 021.

333)  As a direct and proximate result of Defendants Pearlman, Defendants Fischetti,

Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain

and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant

Banks, conduct in violation of the aforementioned statute, Plaintiffs suffered

damages, including but not limited to the loss of their entire *"investment"*.

334)  The aforementioned Florida Statutes also provide certain statutory remedies and

damages, including reimbursement of the actual losses, reasonable attorney's fee and

other damages.

335)  WHEREFORE, Plaintiff demand judgment against Defendants Pearlman,

Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner,

Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants

FISERV and Defendant Banks, for an award of actual damages, prejudgment interest,

costs, attorney's fees, and such other relief as this Court deems necessary and proper.

## COUNT XX - EXPLOITATION OF THE ELDERLY

336)  Plaintiffs repeat and reallege paragraphs 13 to 120, 122 to 174 (from Count 1) and

273 to 280 (from Count XVIII) inclusive as if the same were set forth fully and at

length herein.

--------------------
*Clements et al v. Pearlman et al – Florida Federal Complaint March 2007 – Page 88*

337)   At the time of the investment, certain Plaintiffs were over 65 years of age.

338)   These Plaintiffs, by virtue of their age as set forth herein above, were elderly and
vulnerable adults.

339)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,
Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman
Companies, as well as Defendants FISERV and Defendant Banks, stood in a position
of trust and confidence with a vulnerable adult as that term is defined under Florida
Statutes § 415.

340)   As explained above, The Fraudulent Enterprise involved a commitment of money
that was induced principally by the written and oral representations of Defendants
Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,
McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies that
an economic benefit would be derived from such commitment and by the written
representations and documents submitted to plaintiffs by Defendant FISERV and
Defendant Banks that the "investment" would be handled according to the conditions
of the contract as described above, would be safeguarded and would be deposited into
proper accounts where the investment was insured and from which the investment
could not be misappropriated, all of which were made to plaintiffs to whom
Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,
Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman
Companies, as well as Defendants FISERV and Defendant Banks, stood in a position
of trust and confidence and as that terms is defined under Florida Statutes § 415.

341)   The Fraudulent Enterprise that was induced principally by the written and oral

representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies that an economic benefit would be derived from such commitment and by the written representations and documents submitted to plaintiffs by Defendant FISERV and Defendant Banks that the "investment" would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, was achieved through knowingly deceptive or intimidating tactics, which were designed to obtain or use the vulnerable adult's funds, assets or property of vulnerable persons, with the intent to temporarily or permanently deprive the vulnerable adult of the use, benefit or possession of the funds, assets or property for the benefit of someone other than the vulnerable adult.

342)    Defendants   Pearlman,   Defendants   Fischetti,   Crudele,   Finger,   Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, commitments, representations and documents submitted to the vulnerable plaintiffs and Defendant FISERV and Defendant Banks representations through the documents they submitted or caused to be sent to the vulnerable plaintiffs about how their monies would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, constituted a breach of their fiduciary relationship and duty to the vulnerable plaintiffs.

343)   F.S. § 415.1111 provides for actual damages, punitive damages, attorneys fees and costs of suit, for violations as they related to deception and fraud upon the vulnerable plaintiffs.

344)   As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, the vulnerable Plaintiffs suffered damages, including but not limited to the loss of their entire *"investment"*.

345)   WHEREFORE, the vulnerable Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an award of actual damages, punitive damages, prejudgment interest, costs, attorney's fees, and such other relief as this Court deems necessary and proper, including equitable relief.

## COUNT XXI - CIVIL REMEDIES FOR CRIMINAL PRACTICES

346)   Plaintiffs repeat and reallege paragraphs 13 to 120, 122 to 174 (from Count 1) and 273 to 280 (from Count XVIII) inclusive as if the same were set forth fully and at length herein.

347)   F.S. § *895.05* relates to and/or governs actions of persons or entities, who/which engage in acts of fraud and/or deception and who/which with *"intent"* have received proceeds derived directly or indirectly from a pattern of criminal activity and who/which use or invest, whether directly or indirectly, any part of such proceeds, or other proceeds derived from the investment or use thereof, in the acquisition of any

title to or any right, interest or equity in real property or the establishment or operation of an fraudulent enterprise, in violation of F.S. §§ 772.103 and 772.104.

348)    F.S. § *895.05* also relates to and/or governs actions of persons or entities, who/which engage in acts of fraud and/or deception and who/which, through a pattern of criminal activity, have acquired or maintained, directly or indirectly, any interest in or control of any enterprise or real property and/or are or were employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such an enterprise through a pattern of criminal activity, in violation of F.S. §§ 772.103 and 772.104.

349)    The Fraudulent Enterprise, as described above, and specifically the written and oral representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies that an economic benefit would be derived from Plaintiffs deposit and/or investment of monies and by the written representations and documents submitted to Plaintiffs by Defendant FISERV and Defendant Banks that the "investment" would be handled according to the conditions of the contract as described above, would be safeguarded and would be deposited into proper accounts where the investment was insured and from which the investment could not be misappropriated, were part of a pattern of criminal activity as defined in F.S. § 772.102.

350)    As a part of The Fraudulent Enterprise and the aforesaid written and oral representations of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant

Pearlman Companies and the written representations and documents submitted to

Plaintiffs by Defendant FISERV and Defendant Banks, these Defendants were

knowingly obtaining or using, endeavoring to obtain or to use, the property of

Plaintiffs with the intent to either (i) temporarily or permanently deprive Plaintiffs of

a right to the property or a benefit from the property or (ii) wrongfully appropriate the

property to their own use or for the use of persons/entities who/which were not

entitled to the use of Plaintiffs' property.

351)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman

Companies and Defendant FISERV and Defendant Banks aforesaid acts constituted a

violation of the aforesaid statutes.

352)   F.S. §§ 812.012, 812.014 prohibits persons/entities from:

   a) engaging in a scheme to defraud and obtain property thereby, and/or engaging in a

      scheme to defraud and, in furtherance of that scheme, communicating with

      persons with intent to obtain property from them, in violation of F.S. § 817.034;

   b) engaging in acts to defraud to obtain property, and/or engaging in a scheme to

      defraud and, in furtherance of that scheme, communicating with persons with

      intent to obtain property from them, in violation of F.S. § 817.034;

   c) Issuing false statements through the use of the mail or by mailing or wiring the

      IRS inaccurate information; and

   d) Engaging in any other conduct in violation of F.S. § 817.

353)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus,

Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman

Companies and Defendant FISERV and Defendant Banks aforesaid acts were part of The Fraudulent Enterprise and their conduct and/or participation in The Fraudulent enterprise was part of a pattern of racketeering activity.

354)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts were part of The Fraudulent Enterprise and their conduct and/or participation in The Fraudulent enterprise was committed in order (i) to temporarily or permanently deprive Plaintiffs or cause or allow Plaintiffs to be deprived of their right to their property and/or the benefit thereof and/or (ii) misappropriate or cause or allow the misappropriation of Plaintiffs property to or for said Defendants own use or benefit or for the use or benefit of a person/entity not entitled thereto.

355)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts were part of The Fraudulent Enterprise and their conduct and/or participation in The Fraudulent Enterprise were was part of an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which functioned and/or operated with unity.

356)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts were overt and were part of a conspiracy and in furtherance of a conspiracy.

357)   Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts constituted acts of racketeering as that term is defined under Florida Statutes.

358)   As a direct and proximate result of the Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks aforesaid acts, committed in violation of F.S. § 772, Plaintiffs have been substantially injured in an undetermined amount.

359)   F. S. § 772 provides that Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies and Defendant FISERV and Defendant Banks, are jointly and severally liable to Plaintiffs for the actual damages incurred.

360)   Plaintiffs have forwarded demand pursuant to F. S. § 772.11 prior to initiating this suit.

361)   As a direct and proximate result of Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper, McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, conduct in violation of the aforementioned statute, Plaintiffs suffered damages, including but not limited to the loss of their entire deposited and/or invested monies.

362)   WHEREFORE, the vulnerable Plaintiffs demand judgment against Defendants Pearlman, Defendants Fischetti, Crudele, Finger, Bacchus, Wuellenkemper,

McDonald, Tolner, Jans and Chamberlain and Defendant Pearlman Companies, as well as Defendants FISERV and Defendant Banks, for an order as follows:

a)  Ordering said Defendants to divest themselves of any monies, property or interest in any enterprise, including real property;

b)  Imposing reasonable restrictions on said Defendant, including, but not limited to prohibiting said Defendant from engaging in the same type of endeavor as the enterprise in which it was engaged in violation of F. S. § 895.03;

c)  Awarding actual and treble damages;

d)  Attorney's fees and costs of suit; and

e)  such other relief as the Court may deem just and proper

## COUNT XXII – PROSPECTIVE INJUNCTION TO PREVENT ONGOING *ULTRA VIRES* ACTS AND VIOLATIONS OF FEDERAL AND STATE LAW BY OFFICIALS OF DEFENDANT FLORIDA

363)  Plaintiffs repeat and reallege paragraphs 13 to 120, 122 to 174 (from Count 1) and 273 to 280 (from Count XVIII) inclusive as if the same were set forth fully and at length herein.

364)  Some of the damages which Plaintiffs have been caused to suffer have no adequate remedy at law and require equitable relief.

365)  There is a reasonable likelihood that if an injunction does not issue, Plaintiffs will suffer further irreparable damages, which cannot be remedied by the limited award of monetary damages from the State of Florida, based on the statute which as set forth above, Plaintiffs contend is unconstitutional as related to the facts of this extra-ordinary case.

366)  In this case, there are allegations against the highest official of the State of

Florida, who was at all times involved in and/or part of the prior investigations and decision not to prosecute and/or to take no actions against Defendant Pearlman and Defendant Pearlman Companies, as well as its/their agents, officers, directors and/or other persons involved with The EISA and Trans Con Stock Program Accounts.

367)    The Plaintiffs claims are based upon competent investigative reports (upon which Plaintiffs have a right to rely and which they have further investigated) by reporters at one or more Florida newspapers, such as Helen Huntley at the St. Petersburg Times or Sarah Clarke at the Orlando Sentinel.  In addition, Plaintiffs claims are based upon additional investigative reports made by Les Henderson who conducted years of investigations which led to his book entitled *"Crimes of Persuasion"*.  Plaintiffs claims are also based upon information that is being provided to Plaintiffs persons who have direct knowledge of how The EISA and Trans Con Stock Program Accounts and The Fraudulent Enterprise was operated for almost 15 years.

368)    According to sworn statements made as recently as within the last month, by the Court appointed receiver, Defendant Pearlman Companies were little more than a collection of liabilities, especially Trans Con Airlines and Trans Con Travel Services.

369)    The Court appointed receiver also found that all Defendant Pearlman Companies (i) used the same employees, (ii) were directed by the same person – Defendant Pearlman, (iii) used the same offices and/or addresses and (iv) used the same accounts.

370)    The Court appointed receiver also determined that Defendant Pearlman Companies did NOT observe the proper corporate formalities.

371)    Trans Con Airlines and Trans Con Travel Services were the two companies that

were at the heart of The EISA and Trans Con Stock Program Accounts and The Fraudulent Enterprise was operated for almost 15 years.

372)    The objective evidence suggests that as a result of their investigations during the period from 2002 forward, Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the Office of Financial Regulation, knew, should have known or could have determined through the exercise of reasonable diligence how Defendant Pearlman operated his companies, just as the Court appointed Receiver just did.

373)    The objective evidence suggests that as a result of their investigations, Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the Office of Financial Regulation, knew, should have known or could have determined through the exercise of reasonable diligence that Defendant Pearlman operated his companies as one entity and did not observe the normal and required corporate formalities, just as the Court appointed Receiver just did.

374)    Defendant Crist and persons under his authority, including persons in the Office of the Florida Attorney General and persons in the Office of Financial Regulation, had multiple duties in relation to the investigations and connections with Defendant Pearlman.

375)    The duties and/or restrictions related to Defendant Crist when he was the Attorney General included the duty to avoid even the appearance of impropriety with regard to investigations that were conducted by his offices or by the OFR.

376)    The duties and/or restrictions related to Defendant Crist when he was a candidate

for the Office of Governor, included  not only the duty to avoid even the appearance of impropriety but also included strict limitations related to campaign contributions and other similar financial issues.

377)    If the allegations and evidence which is coming forth from investigative journalists, authors, former insiders, persons with knowledge and even the Court appointed receiver prove to be true, they raise serious as relates to Defendant Crist, Defendant Florida and they raise serious questions as relates to the ongoing investigation into the actions of Defendant Pearlman, Defendant Pearlman Companies and other Defendants.

378)    If the allegations and evidence prove to be true, further charges and claims may have to be filed related to (i) potential "bribery" of government officials, (ii) obstruction of justice, (iii) receipt of and/or benefiting from "stolen" property – The EISA or Trans Con Stock Program account monies, and (iv) violation of Florida election campaign laws.

379)    If the allegations and evidence prove to be true, there have been violation of Florida and US laws including but not limited to 18 USC § 201, which make the need for prospective equitable relief appropriate.

380)    Based on the evidence from the Court appointed receiver and other evidence Plaintiffs have secured, there is a probability that the monies and other benefits, in the form of campaign contributions, unpaid or grossly underpaid-for use of private jets, sky boxes, fundraisers and other benefits that were given to Defendant Crist's Gubernatorial Campaign by Defendant Pearlman and Defendant Pearlman Companies can be traced to The EISA or Trans Con Stock Program account monies.

381)     Whether or not Defendant Crist actually knew the source of the monies, at the time he accepted, the tens of thousands of dollars in contributions, use of private jets, sky boxes and hosting of fundraisers given to his campaign by Defendant Pearlman and Defendant Pearlman Companies is an issue that will be resolved through discovery.

382)     Florida Statute 102 provides that it is a 3rd degree felony for a candidate to accept two or more campaign contributions from the same party in excess of $500.

383)     The objective evidence shows that Defendant Crist received $11,000 in actual monetary contributions from Defendant Pearlman and Defendant Pearlman Companies.  These companies and individuals are alter egos of one another, as evidenced by the receiver's report, by the fact that most of the checks were written on the same day or successive days, and based on the fact that the same person or persons wrote the checks.

384)     The objective evidence shows that Defendant Crist also received the additional benefits of the use of private jets and then apparently sought to report the cost for using a Gulfstream jet at less than $350 per trip, when the actual use is more accurately $4,000 per hour.  $350 per year amounts to 5 minutes per year on the private jet, where even one trip should cost upwards of $4,000-$8,000.

385)     The objective evidence related to the acceptance of campaign contributions and other benefits from a single entity, to wit: Defendant Pearlman and/or Defendant Pearlman Companies – which Defendant Crist knew or should have known to be the case – gives rise to circumstances that further call into question the integrity of the 2002 – 2006 investigations by Defendant Crist, the offices of the Florida Attorney

General and the Office of Financial Regulation.

386)    The nature of the relationship between Defendant Crist and Defendant Pearlman

and Defendant Pearlman Companies on the one hand and the timing and

circumstances related to the cessation of the investigations into the activities of and

failure to prosecute Defendant Pearlman and Defendant Pearlman Companies or any

of its/their employees, agents, directors and/or others involved with the EISA and

Trans Con Stock Program accounts is suspect.

387)    If the allegations are true, Defendant Crist and other officials knowingly,

intentionally, carelessly, recklessly, negligently or improperly received and/or came

to be in possession of tens of thousands of dollars that was misappropriated from

Plaintiffs, the origins of which were The EISA and Trans Con Stock Program account

monies.

388)    To date, hundreds of millions of dollars and Pearlman himself has disappeared

from the Country.

389)    Plaintiffs' only available remedy to follow the monies to whatever sources as may

remain in the US and to seek the assistance of the Court in protecting them from

further ongoing damages.

390)    Witnesses are refusing to testify and records are being lost.

391)    Additional evidence exists, including records in the possession of (i) Office of

Financial Regulations, (ii) Office of the Florida Attorney General, and (iii) Office of

the Gubernatorial Campaign of Defendant Crist.

392)    The evidence relates to financial records, notes of communications, documents,

reports, notes of telephone calls, witness interviews and other such information kept

in hard copy and electronic form.

393)    There are or should also be records related to persons involved with The

Fraudulent Enterprise, including all the named Defendants, and third parties such as

Alec Defrawy a/k/a Ayman El-Difrawi a/k/a Alexander Defrawy, Sean Keck and

other persons who have knowledge of relationships and/or investigations of

Defendant Crist, the office of the Attorney General and/or the Office of Financial

Regulation on the one hand and Defendants Pearlman, Defendant Pearlman

Companies,  Fischetti, Crudele, McDonald, Tolner, Jans, Chamberlain  on the other

hand as they related to the EISA and Trans Con Stock Program accounts or other

frauds of which Defendant Pearlman and/or any of Defendant Pearlman Companies

were accused during the period from 1995 to 2006.

394)    There is a reasonable likelihood that a conflict of interest presently exists with

regard to the ability of the Office of Financial Regulation to conduct an investigation

without notifying or feeling it their duty to inform one or more of the Defendants

named in this action, especially Defendant Pearlman, or Defendant Crist, or officials

of Defendant State of Florida.

395)    There is a reasonable likelihood that a conflict of interest presently exists with

regard to the ability of the Office of Financial Regulation to conduct an investigation

without disclosing or feeling it their duty to disclose to one or more of the Defendants

named in this action, especially Defendant Pearlman, or Defendant Crist, or officials

of Defendant State of Florida, information and evidence that is discovered in the

course of the ongoing investigation.

396)    If there are no reasonable injunctions and restrictions related to (i) preservation of

and access evidence related to Defendant Pearlman and Defendant Pearlman Companies and the Office of Financial Regulations investigations related to them from 1995 to 2006, (ii) restrictions that persons from the Office of Financial Regulation or The Office of Attorney General or Defendant Crist's offices who were involved in the prior investigations be precluded from the ongoing investigations and (iii) freezing of certain existing monies that can be traced from EISA and/or Trans Con Stock Program account monies to Defendant Crist and his Gubernatorial campaign assets, there is a reasonable likelihood that Plaintiffs will suffer further irreparable damages.

397)   WHEREFORE, Plaintiffs pray the Court issue an injunction as follows:

a)   All evidence related to Defendant Pearlman and Defendant Pearlman Companies and the Office of Financial Regulations investigations related to them from 1995 to 2006 shall be preserved and Plaintiffs shall be given immediate access to such evidence;

b)   Persons from the Office of Financial Regulation or The Office of Attorney General or Defendant Crist's offices who were involved in the prior investigations are precluded from the ongoing investigations;

c)   Evidence from the ongoing investigations into Defendant Pearlman and Defendant Pearlman Companies, officers, agents, employees and/or representatives involved in the EISA and Trans Con Stock Programs Accounts, being conducted by the Office of Financial Regulation or The Office of Attorney General shall be made available to Plaintiffs;

d) Monies that can be traced from EISA and/or Trans Con Stock Program account monies to Defendant Crist and his Gubernatorial campaign shall be frozen and segregated so that they are available to pay damages to Plaintiffs and others victimized by Defendant Pearlman and Defendant Pearlman Companies through the EISA and Trans Con Stock Programs Accounts and The Fraudulent Enterprise.

RESPECTFULLY SUBMITTED:

INTERNATIONAL LAW GROUP, LLC

Dated: March 5, 2007
Tampa, Florida

By: James F. Lowy, Esq., P.A.
Florida Bar # 0081434
James F. Lowy
P.O. Box 10614
Tampa, Florida 33679
(813) 760-2901 Tel.
(813) 282-0384 Fax.
jameslowy@gmail.com